[No. 17340. Department One. December 11, 1922.]

RENSSELAER VALVE COMPANY, *Respondent*, v. UNION
NATIONAL BANK OF SEATTLE, *Appellant*.[1]

PRINCIPAL AND AGENT (35-1, 62)—AUTHORITY OF AGENT—EVIDENCE
—SUFFICIENCY—ESTOPPEL. The authority of an agent handling fire
hydrants on a commission basis and acting as manager of the local
office for a foreign company, to cash or deposit checks payable to
the principal, and estoppel to question the same, is not sustained,
where the agent was also doing business on his own account, his
authority as an agent was very limited, and the principal notified
the bank that the principal's checks could be deposited in the agent's
personal account only where they were in partial payment for goods
in which the principal had no financial interest, but had been in-
cluded inadvertently with payments for the principal's goods.

BANKS AND BANKING (29)—DEPOSITS BY AGENT—LIMITATIONS ON
AUTHORITY—LIABILITY. Where a bank permitted an agent to deposit
checks payable to his principal in the agent's. personal account,
with knowledge of his want of authority so to do, it is liable to the
principal for the loss of the money.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered December 17, 1921,
upon findings in favor of the plaintiff, in an action for
conversion, tried to the court. Affirmed.

*Donworth, Todd & Higgins* (*Hyman Zettler*, of
counsel), for appellant.

*Shank, Belt & Fairbrook*, for respondent.

MACKINTOSH, J.—This is an action in conversion
based upon the Union National Bank's permitting one
Fred H. Hayner to deposit in his personal account in
that bank funds belonging to the Rensselaer Valve
Company. The action arises by the defalcation of
Hayner.

The case presents purely a question of fact. When
the facts have been determined, the rule of law appli-

[1]Reported in 210 Pac. 947; 213 Pac. 490.

cable to them is very simple; and this in spite of the fact that elaborate briefs have been furnished by both parties.

It is impossible within the reasonable confines of an opinion to recite all the facts, but the more important ones to the determination of the case can be summarized as follows: Rensselaer Valve Company is engaged in the manufacture of valves and fire hydrants in the state of New York. About the year 1913, Fred H. Hayner was placed in charge of such business as the valve company had in the city of Seattle, and conducted that business. Exactly what his relationship to the company was is immaterial, for in 1917 a new arrangement was entered into between the valve company and Hayner whereby he thereafter sold the valve company's goods on commission. This arrangement was necessary for the reason that the products of the valve company were sold principally to contractors on public work, and it was necessary in order to have the valve company's products used that they include with their bids to the contractors the necessary adjuncts and equipment going along with their fire hydrants and valves; and as the valve company did not deal in these accessories, Hayner undertook, as a business of his own, the procuring of this necessary additional equipment, and on his account purchased and sold it to the contractors along with the valve company's products. In conducting the business in this manner, payments would necessarily be made to Mr. Hayner individually in a great many instances, and a great many checks would come into his possession, either made payable to the valve company or to himself individually, which were partly for the property of himself and partly for the property of the valve company. It was impracticable to have these checks segregated as to the

amount by the makers of them, as many of them were Italians engaged in street work in the city of Seattle who would not understand the situation. The arrangement between the valve company and Mr. Hayner was that all checks received by Mr. Hayner which were made in payment of valve company goods only were to be sent immediately and directly to the home office of the company in New York, and were not to be deposited in a local Seattle bank. This arrangement, however, might prove precarious in some instances, for checks might be received from certain sources where there might be the danger, in forwarding them to New York and having them returned to Seattle for collection, that the accounts would be depleted in the meantime and before the checks were finally presented for payment. So, in April, 1917, the president of the valve company and Mr. Hayner went to the National Bank of Commerce in Seattle, where Mr. Hayner already had a private account, and there was then opened an account in the name of the Rensselaer Valve Company for the purpose of having deposited in it checks made to the Rensselaer Valve Company which it might be inadvisable to have directly forwarded to the company's office in New York, so that these checks might be immediately deposited and presented to the bank upon which they were drawn, and the funds thus to the credit of the valve company's account in the National Bank of Commerce could be checked against directly and sent to the home office. The whole situation was, according to the testimony of Mr. Rowe, president of the valve company, and not seriously contradicted, explained to the assistant cashier of the National Bank of Commerce, and in addition to this oral arrangement between the bank and the valve company, through its president, there appears in the record a letter dated April 5, 1917, as follows:

"Seattle, April 5, 1917.
"National Bank of Commerce,
    "Seattle, Wash.
    "Gentlemen: Confirming conversation with your
Mr. Brownell, the account now opened as of Rensselaer
Valve Company, in your bank, is of moneys belonging
to said Rensselaer Valve Company, but subject to
check signed Rensselaer Valve Company by Fred H.
Hayner, Manager, but otherwise subject in all respects
to order of proper officials of said Rensselaer Valve
Company (a corporation) of Troy, N. Y., duly accred-
ited as such in the usual manner.
                    "Yours respectfully,
                    "Rensselaer Valve Company,
                        "By Ellis L. Rowe, Prest."

At the time this arrangement with the National Bank
of Commerce was made, Mr. J. A. Swalwell was the
vice-president of that bank, and continued in that posi-
tion until August, 1918, at which time he became presi-
dent of the Union National Bank, the appellant here.
In July, 1919, Mr. Hayner opened an account in his
own name in the Union National Bank, and Mr. Rowe
individually guaranteed to the bank a credit to Mr.
Hayner to the extent of $5,000. This was the same
arrangement originally made with the National Bank
of Commerce, and the same explanation seems to have
been made to the Union National Bank, or at least the
knowledge of it is imputable to Mr. Swalwell, that it
was for the purpose of allowing Mr. Hayner to make
bids for the furnishing of the valve company's prod-
ucts and accessories and adjuncts where a certified
check was required to be deposited with the bid, and
was made for the purpose of promoting Mr. Hayner's
business, and incidentally in assisting him in the sale
of the valve company's products. The testimony
shows that Mr. Hayner, instead of forwarding checks
made to the valve company, the proceeds of which en-
tirely belonged to that company, deposited these checks

in his individual account in both the National Bank of Commerce and the Union National Bank; that he deposited in those accounts also checks which were intended not to have been sent directly to the home office, but to have been deposited in the valve company's account in the National Bank of Commerce; that he deposited in his private accounts checks a portion of which belonged to him and a portion of which belonged to the company. These later checks he had a right to deposit in the manner he did.

This course of conduct continued until August or September of 1920, when Mr. Hayner died. It was then discovered that he was in default to the valve company in an amount in excess of $80,000.

In April, 1920, the following correspondence took place between the Union National Bank and the Rensselaer Valve Company:

"THE UNION NATIONAL BANK.

Seattle, Washington,
"Mr. Rowe,                          April 3, 1920.
  "175 No. El Molino Ave.,
  "Pasadena, Cal.
  "Dear Mr. Rowe: From time to time Mr. Hayner desires to place to his personal credit checks drawn in favor of the Rensselaer Valve Company. If this is in accordance with your wishes will you kindly sign the enclosed letter authorizing us to credit these checks to his personal account, and greatly oblige,
                    "Yours very truly,
                      "J. A. Swalwell, President."
  (Enclosure)

"THE UNION NATIONAL BANK.

Seattle, Washington,
"Union National Bank,              Mar. 24, 1920.
  "Seattle, Wash.
  "Gentlemen: You are hereby authorized until written notice to the contrary is received by you to pay or accept for credit to the personal account of

Fred H. Hayner, either checks or any other negotiable paper made payable to the firm when endorsed for the firm by him.            Yours very truly,
            "Rensselaer Valve Company."

            "RENSSELAER VALVE COMPANY.
                    "175 N. El Molino Ave.,
                "Pasadena, Cal.   April 14, 1920.
"Mr. J. A. Swalwell, Prest.
    "Union National Bank,
        "Seattle, Wash.
    "Dear Mr. Swalwell:  Answering your recent letter, I am enclosing a letter and two copies of same, which, while differing slightly from the 'wording' sent in yours, I trust will be satisfactory.
    "While we have full confidence in Mr. Hayner, when the Caldwell Company got into trouble, we would have had a much more serious loss (as others did have) had we not become posted as to the laws of your State of Wash. in regard to carrying 'Consigned Stocks of Goods' whereby the slightest concession of 'ownership' of such goods, until payment therefor is actually in the hands of the company owning same, is taken advantage of in such law for the benefit of 'Creditors'; hence the changes made to definitely outline such ownership.
            "Yours Resp'y,
            "Ellis L. Rowe, Prest."

            (Enclosure)
        "RENSSELAER VALVE COMPANY.
                    "175 N. El Molino Ave.,
                "Pasadena, Calif.   April 14, 1920.
"Union National Bank,
        "Seattle, Wash.
    "Gentlemen:  You are hereby authorized, until written or telegraphic notice to the contrary is received by you, to accept for collection and credit to the personal account of Fred H. Hayner, either checks, drafts or other negotiable paper, made payable to the firm when endorsed for the firm by said Fred H. Hayner.
    "It is understood, however, that such checks, drafts, etc., so offered your bank for collection, by Mr. Hayner,

are in partial payment for goods in which the Rensselaer Valve Company have no financial interest, but included by customers, inadvertently with payments for consigned Rensselaer goods.

"All checks covering payments for Rensselaer consigned goods only, and not covering other goods sold by Mr. Hayner, should be sent to the main Troy, N. Y., office of the firm for collection.

"Yours very truly,
"Rensselaer Valve Company,
"By Ellis L. Rowe, Prest."

"THE UNION NATIONAL BANK.

Seattle, Washington,
"Mr. Ellis L. Rowe, President,        April 28, 1920.
    "Rensselaer Valve Co.,
        "175 N. El Molino Ave.,
            "Pasadena, Calif.

"Dear Mr. Rowe: Upon my return to the bank I found your letter of the 14th inst. enclosing authority of Fred H. Hayner to deposit checks to his personal account, etc., with certain exceptions.

"Under the circumstances I do not see how we can allow Mr. Hayner to deposit checks to his personal account under this authority, for the reason that we would have to investigate each check and know that it is not given in payment of moneys due your company. The last clause of your authority reads:

"'Checks drawn in favor of Mr. Hayner are in partial payment for goods in which the Rensselaer Valve Company has no interest, but included by customers, inadvertently, with payments for consigned Rensselaer goods.'

"You can undoubtedly see how difficult it would be for us to operate under this authority. Under the circumstances I think it would be well for your company, as well as the bank, to require Mr. Hayner in case a check is drawn to the order of the company to have it corrected at the time rather than to deposit it to his credit.

"We are of course anxious to handle this matter in a manner that would be satisfactory to you, and in a

way that affords you the greatest safety, as well as ourselves. If you have any further suggestions to make, we would be glad to hear from you on the subject.

"With best personal regards, I am,
"Yours very truly,
"J. A. Swalwell, President."

This last letter remained unanswered.

Prior to the receipt of the letter of April 14, 1920, by the Union National Bank, Mr. Hayner had deposited checks belonging to the valve company in his private account in that bank in the sum of $6,847.10, and after the writing of that letter there was deposited in Mr. Hayner's private account in the Union National Bank checks belonging to the valve company in the sum of $4,063.60.

The facts in the case naturally resolve themselves into two situations; first, that relating to those checks deposited before April 14, 1920, and the second to those deposited subsequently.

Taking up first the situation in regard to the deposits before April 14, 1920, it is the contention of the appellant that the bank is not liable, for reasons which can be best set forth in appellant's own language in abstracting its answer:

"That plaintiff from the year 1919 to October, 1920, maintained a branch office in the city of Seattle. That during all that time one Fred H. Hayner was in sole charge of said office with the title of manager. That Hayner during said period was vested by the plaintiff with full authority to sell its goods to the trade and to accept payment therefor either in cash or in checks payable to said plaintiff company or to himself. That at all times mentioned herein he had full authority from plaintiff to endorse, cash or deposit any and all checks payable to plaintiff company and received by him in payment of goods of said plaintiff company.

"That plaintiff at all times herein mentioned held

Hayner out as the manager of its branch office in Seattle with full authority to transact all business in plaintiff's name, to receive all payments made by purchasers of its goods, to endorse, cash or deposit all checks so received and to place said funds either in the account of the company or in accounts carried by him in the banks of Seattle in his (Hayner's) own name.

"That at all times mentioned plaintiff permitted Hayner to open banking accounts either in the name of the company or in his own name, and to deposit the moneys belonging to said company in these accounts, or any of them, and to withdraw the funds in said accounts upon checks signed by him either as manager or upon his own personal signature.

"That from time to time the plaintiff, by its president, guaranteed notes of the said Hayner given to banks in the city of Seattle, and to the defendant The Union National Bank of Seattle for the purpose of raising funds to carry on plaintiff's branch office in the city of Seattle, and held Hayner out and represented him to the defendant as a person in whom said defendant might place implicit confidence.

"That from the year 1917 to October 1920, plaintiff failed and neglected to audit Hayner's accounts as manager of its Seattle branch, and failed and neglected to check up the inventory of the stock of goods in the possession of said Hayner in the warehouse in Seattle, and failed and neglected to audit his banking accounts in the city of Seattle. That if said audit and inventory had been made plaintiff could not have failed to discover the true conditions of Hayner's accounts and the manner in which he was conducting the Seattle branch office of plaintiff company, and would have discovered the true condition of his affairs and accounts with the plaintiff company, and thereby would have avoided the loss, if it suffered any, which it afterwards claimed to have discovered by its audit and inventory in the year 1920 as thereinafter alleged.

"That after Hayner's death in October, 1920, plaintiff audited his accounts as manager of its Seattle branch and inventoried the stock of goods belonging to plaintiff which Hayner had in his possession in Seattle

at the time of his death, and then for the first time plaintiff claimed that Hayner as such manager was short in his accounts and had embezzled and appropriated moneys belonging to said corporation to his own use, and that he had wrongfully and without authority cashed and converted checks payable to the Rensselaer Valve Company.

"That among the checks so claimed by plaintiff to have been converted by Hayner were the checks which are mentioned and described in the twenty-six causes of action in plaintiff's complaint.  That each and all of said checks was endorsed by Hayner as manager of the Seattle branch of the Rensselaer Valve Company with an endorsement as follows:

" 'Rensselaer Valve Company
" 'By F. H. Hayner, Mgr.'
or " 'Rensselaer Valve Company
" 'Fred H. Hayner, Mgr.'

and if any of said checks were cashed at defendant's bank or deposited therein by Hayner, the same were cashed or deposited by him as manager of the Seattle branch of the plaintiff company with full authority to do so, and that the plaintiff company was thereby estopped by its course of conduct thereinabove alleged to claim that the said Fred H. Hayner did not have authority so to do."

The testimony, however, does not substantiate these contentions.  It shows that, whatever may have been the justifiable belief a stranger might have had from the course of the valve company's conduct of the business as to the relationship between it and Mr. Hayner, the two banks were exactly apprised of what the relationship was, and that after 1917 Mr. Hayner was not in fact the agent of the valve company; that his authority was very limited, and that there was no holding out by the valve company to the banks that would justify them in believing that his authority was greater than it actually was.  It is true that the valve company was not diligent in a personal examination of Mr. Hayner's

business in Seattle, although by correspondence it was continually calling upon him for the settlement of accounts, but the explanations he gave for the slow payments were plausible, and in such of the instances as were actually investigated, his statements were found to be truthful. There was nothing in this, as we view it, sufficient to absolve the appellant from responsibility.

The real foundation of appellant's disclaimer of liability is that the valve company is estopped by its conduct in handling these accounts from now questioning Mr. Hayner's authority to do as he did. An examination of the testimony which bears on this point will show how far it is from working any such estoppel. This claim of estoppel is based on the fact that Mr. Swalwell, when he went to the Union National Bank as its president in 1918, took with him the knowledge which he had acquired as vice-president of the National Bank of Commerce of the manner in which the valve company's and Mr. Hayner's accounts had been handled in that bank, and the contention of course is that Mr. Hayner had been depositing in his own account in the National Bank of Commerce checks which should have been sent directly to the valve company, or should have been deposited to its account in that bank, and that the valve company must have known of these facts and acquiesced in them, so that Mr. Swalwell was justified in believing that that course of conduct was sanctioned and that a continuation of it in the Union National Bank was also proper.

The evidence shows that some twenty-five or more checks in varying amounts were sent directly by Mr. Hayner to the valve company in accordance with the understanding between them; that there were also sent from July 2, 1917, to September 17, 1920, about thirty-six checks, twenty-two of these were drawn by Mr.

Hayner on his private account in the National Bank of
Commerce, nine were drawn by Mr. Hayner on the
valve company's account in the same bank, and five
were drawn by him on his private account in the Union
National Bank. Before Mr. Swalwell left the National
Bank of Commerce in August, 1918, nineteen checks
had been drawn by Mr. Hayner from the two accounts
in that bank; ten from his private account and nine
from the valve company's account. Remembering that
he had the right to put into his private account those
checks in which both he and the valve company were
interested, was there anything in this situation to im-
port notice to the valve company that Mr. Hayner was
depositing to his private account in the National Bank
of Commerce checks in which he had no interest and
which under the specific arrangement he had no au-
thority to deposit there? Mr. Swalwell himself testi-
fied, as appears in the abstract of the evidence made
by appellant, at page 123 thereof, that he did not
examine the valve company's or Mr. Hayner's accounts
at the National Bank of Commerce to determine the
source from which that account was made; that the only
examination he made of that account was of checks in
excess of $1,000 drawn against the account. He testi-
fies as following, quoting from the abstract:

"As vice-president of the National Bank of Com-
merce from 1913 on, I came in contact with a great
many customers of the bank as one of its loan officers.
Also our system in the bank brought me in close con-
tact with the accounts themselves in that we examined
all large checks that came from the clearings and from
the mail each morning. These checks were put on the
desk of the cashier and on my desk and we made an
examination of them. We examined all checks of $1,000
or more. . . . I knew that the business of the
Rensselaer Valve Company was carried through
Fred H. Hayner's personal account in the bank. As to

my knowledge of remittances made by Mr. Hayner
through his account to the Rensselaer Valve Company,
as I stated before, Mr. Clark and myself examined all
large checks every morning, and in that examination I,
of course, would see to whom the checks of Fred H.
Hayner or any other person were made payable. . . .
I do not know that I could state positively now as to any
checks in amounts over $1,000 drawn on the Fred H.
Hayner account in the National Bank of Commerce
after the Rensselaer Valve Company account was
opened. I would have to refresh my memory on that.
I would see the check to which you have called my
attention in the amount of $1,689.50 from Fred H.
Hayner to the Rensselaer Valve Company dated July
2, 1917, which passed through the National Bank of
Commerce shortly after that date. . . . After
writing Mr. Rowe in my letter of April 28, in which I
ended the letter 'if you have any further suggestion to
make, we would be glad to hear from you on the sub-
ject,' I received no reply. . . . At the Union Na-
tional Bank, as an officer of the bank, my practice as
to the examination of checks of customers for different
amounts that passed through the bank, was as follows:
We hold an officers meeting at 9:30 in the morning.
All of the officers of the bank attend the meeting. At
that meeting we take up the notes that are maturing
that day. We also go over the loans that were made
the previous day. We take up and discuss loans or
applications for loans that have been made, and any
other business that any officers of the bank think ad-
visable to bring before the meeting. We also have the
checks for a thousand dollars or more brought into
the meeting and we read off the drawer of the check,
the amount and the party to whom the check is drawn.
That is information that is given to all of the officers
of the bank so that they can have a general knowledge
of the commercial accounts in the bank. . . . The
checks of over $1,000 which I have stated Mr. Clark
and I examined at the National Bank of Commerce
were not checks for deposit. They were checks drawn
on the National Bank of Commerce. . . . It is only
checks for $1,000 or over that come to the attention

of the officers, in that way. That is the same course
that was pursued down at the Union National Bank,
with this difference, that instead of Mr. Clark and
myself running over these checks, the checks would be
brought into our committee meeting and would be
called out, the drawer of the check and the party to
whom they were drawn; the names would be called out
so that all the officers would have that knowledge. . . "

An examination of the checks drawn against the
Hayner private account in the National Bank of Com-
merce reveals but one in excess of $1,000, and that was
the first check drawn against that account in July, 1917,
in favor of the respondent.

This is the testimony which Mr. Swalwell gives as
having furnished him the knowledge that the valve
company was allowing Mr. Hayner to violate its agree-
ment in regard to the deposit of checks. It shows
knowledge of but one check in this entire account. As
a matter of fact, no check for over $1,000 was drawn
against the valve company's account in the National
Bank of Commerce. Not only does it not prove that
Mr. Swalwell was justified in believing that the valve
company was allowing Mr. Hayner to deposit in his
own account checks to which he was not entitled, but
it also does not prove that the valve company knew
that Mr. Hayner was violating his instructions and
exceeding his authority, which, as we have already
indicated, only allowed Mr. Hayner the right to deposit
in his private account checks in which he had a partial
interest. Now, when Mr. Swalwell went over to the
Union National Bank he took with him the knowledge
which he had acquired as an officer of the National
Bank of Commerce, and he says, in order to justify his
conduct in regard to Mr. Hayner's account in the Union
National Bank, that the valve company had allowed
the National Bank of Commerce account to be con-

ducted contrary to its original understanding with Mr. Hayner, and Mr. Hayner handled his account in the Union National Bank only in the same manner. This testimony appears in the abstract at page 119:

"I asked him (Hayner) whether or not there had been any change in his relations with the Rensselaer Valve Company and whether or not the account would be carried the same as it was àt the National Bank of Commerce when I was there, and he said 'yes' it would."

There was no check for $1,000 drawn by Mr. Hayner against his private account in the Union National Bank in favor of the valve company prior to March 14, 1920, and, as a matter of fact, there was only one check in any amount drawn by Mr. Hayner in favor of the company before that day, and that was for $30.01. Again, can it be said that the knowledge, even if Mr. Swalwell had possessed it, of this check being drawn by Mr. Hayner on his private account in favor of the valve company would justify the bank in believing that the valve company was allowing Mr. Hayner to deposit in his private account in the Union National Bank checks to which they alone were entitled, or can it be said that the company is estopped by the receipt of one check for $30.01, drawn by Mr. Hayner against his private account in the Union National Bank in their favor, from now saying that he had no authority to deposit in his private account in that bank checks to which they alone were entitled? It would seem that the mere statement of the facts is sufficient to determine this phase of the case.

Referring again to the guarantee by the president of the valve company of a credit to the extent of $5,000, there is nothing in the record to show that this arrangement was other than what has already been stated it amounted to—an assistance to Mr. Hayner in the con-

duct of his business, and there was certainly nothing
so unusual in the proceeding as to justify the bank in
assuming that Mr. Hayner thereby was constituted an
agent of the valve company with authority to deposit
in his own name money which belonged to the valve
company.

Taking up now those deposits made in the Union
National Bank subsequent to the letter of April 14,
1920, the case against the bank seems even stronger.
Had the conduct of the valve company been such as to
justify the bank in believing that Mr. Hayner had
authority to deposit company checks in his own ac-
count, certainly the letter of April 14, 1920, removed
the justification for any such belief. The valve com-
pany in that letter plainly told the bank that Mr. Hay-
ner had no right to place in that bank in his private
account checks, drafts or other paper which belonged
entirely to the valve company, and the limit upon Mr.
Hayner's authority was clearly recognized in the
answering letter of the Union National Bank, dated
April 28, where the bank complains of the difficulty of
operating under this authority, but the fact remains
that that was the only authority ever given to the bank
under which it could operate, and it must have assumed
that difficulty when it allowed Mr. Hayner to use the
account, and cannot now deny the responsibility.
Whatever it may have thought its justification to have
been prior to the receipt of this letter of April 14, 1920,
thereafter there remained not a shred of authority for
the bank to allow the account to be handled in the
manner in which it was handled. After that letter
there was no actual or implied authority in Mr. Hayner
to handle the account as he did. The bank indeed knew
this and, directly upon notice from the valve company,
complained of the difficulty it would be subjected to,
and yet continued to allow the account to be handled

as it had been theretofore. If a bank desires to have an account of this kind it must accept it upon the terms which the depositor indicates, otherwise there would be no security in making bank deposits. When the valve company told the Union National Bank not to receive checks of a certain kind, the bank was bound by that instruction and is liable for its violation.

As to the items subsequent to April 14, 1920, there can be no question of the bank's liability.

The citation of authorities is needless in this case, for the facts establish the responsibility of the Union National Bank beyond question.

The trial court found for the respondent on all of its twenty-six causes of action, with interest, except the seventeenth cause of action, which was reduced from $807.43 to $459.95, with interest, and this judgment is affirmed.

BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.

### ON REHEARING.

[Department One.   March 8, 1923.]

PER CURIAM.—Our attention having been called by a petition for rehearing to the inclusion in the judgment in favor of the respondent of a portion of its seventeenth cause of action, amounting to the sum of $459.95, which we are now satisfied should not have been allowed, the judgment is modified to that extent.