[No. 17642.  *En Banc.*  April 8, 1924.]

## RENSSELAER VALVE COMPANY, *Appellant*, v. NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent*.[1]

BANKS AND BANKING (29)—DEPOSITS BY AGENT—ACTIONS—LOSS OF DEPOSITS—EVIDENCE—SUFFICIENCY. In an action to recover from a bank for permitting plaintiff's agent to cash and to deposit to his individual account checks payable to the plaintiff, contrary to instructions given to the bank, plaintiff's loss is sufficiently shown by the positive evidence of two officers that the company did not receive the proceeds of such checks.

SAME (29)—DEPOSITS BY AGENT — OWNERSHIP — PRESUMPTION. Where a bank permitted an agent to deposit checks payable to his principal in the agent's personal account, with knowledge of his want of authority so to do, and in direct violation of its instructions, it is liable to the principal for the loss of the money; and the presumption would be that the checks payable to the principal represented money belonging to it.

SAME (29) — DEPOSITS BY AGENT — LIMITATION ON AUTHORITY — LIABILITY. It is no defense to such liability that, under the instructions given, the agent could have deposited the checks to the principal's account, and that the agent then had power and authority to check it out and could have appropriated the proceeds, so that the bank's violation of instructions did not cause the loss; since the

[1]Reported in 224 Pac. 673.

passing of the funds to the principal's account was a measure for the principal's protection agreed to by the bank (FULLERTON and PARKER, JJ., dissenting).

Appeal from a judgment of the superior court for King county, French, J., entered March 29, 1922, upon granting a nonsuit, dismissing an action for conversion. Reversed.

*Shank, Belt & Fairbrook,* for appellant.
*Kerr, McCord & Ivey,* for respondent.

BRIDGES, J.—The appellant, Rensselaer Valve Company, is a corporation engaged in the manufacture of valves and hydrants, having its factory and its principal place of business at Troy, in the state of New York. It maintains a branch place of business in the city of Seattle for the sale of its products. This branch, during the times which gave rise to the present controversy, was under the management of one Fred H. Hayner, who conducted it under the title of "Rensselaer Valve Company. Fred H. Hayner, Mgr." The appellant's trade in Seattle was principally with contractors on public works, who paid for the articles purchased largely with checks drawn on banks operating in the city of Seattle. Prior to the year 1917, all these checks were forwarded to the appellant at Troy, and were by it collected in the usual manner through banking houses. The appellant and Hayner soon discovered that contractors often desired to purchase from one person, not only the hydrants and valves they needed, but also other supplies, such as pipe and jute. They agreed that Hayner might, on his own account, become the agent for products other than hydrants and valves. It was realized that, in doing business in this way, certain checks might be made payable to appellant a part of the proceeds of which might belong to Hayner. For

this reason, and for the further reason that, under the former method of collection, checks were sometimes lost for want of timely presentation, a change in the method of collecting a part of the checks was desirable. To this end, the president of the appellant and Hayner approached the respondent, a national bank doing business at Seattle, when an understanding was reached satisfactory to all parties. The substance and effect of the agreement was that all checks received by Hayner payable to the appellant should be deposited by him in the respondent bank in the name and to the account of the appellant. In order that Hayner might pay himself such sums as belonged to him and remit the balance to the appellant, he was given authority to sign checks in the name of appellant drawn on its account. After appellant had given these oral instructions to the bank, it wrote respondent the following letter embodying the substance of the agreement:

"Seattle, April 5, 1917.

"National Bank of Commerce,
"Seattle, Wash.

"Gentlemen: Confirming conversation with your Mr. Brownell, the account now opened of Rensselaer Valve Company, in your bank is of moneys belonging to said Rensselaer Valve Company, but subject to check signed Rensselaer Valve Company by Fred H. Hayner, Mgr., but otherwise subject in all respects to the order of proper officers of said Rensselaer Valve Company (a corporation) of Troy, N. Y. duly accredited as such in the usual manner.          Yours respectfully,
"Rensselaer Valve Company,
"By Ellis L. Rowe, Prest."

The business was conducted through Hayner until the fall of 1920, when an investigation of his affairs which the appellant then made disclosed that he was in default to it in a large sum of money. This action was then brought to recover from the bank the amount

of certain checks made payable to it which were either paid by the bank to Hayner in cash or deposited to his private account without first being deposited to the account of the appellant.

The testimony tended to show that the respondent had not followed the instructions which we have mentioned. Instead of requiring the checks made payable to the appellant to be deposited in its name, it permitted Hayner, on the presentation thereof, to direct the disposition of their proceeds without so depositing them. In certain instances it paid him cash over the counter for them, and in other instances permitted him to deposit the amount of the checks directly to his individual account. While the appellant's testimony concerning its loss is not very satisfactory, yet it is sufficient, without any contradiction, to show that it had never been repaid the amount of moneys represented by the checks so cashed by Hayner and deposited to his credit. At the close of the appellant's testimony, the trial court granted respondent's motion for nonsuit and thereupon entered a judgment dismissing the action.

Let us state the matter more concretely. According to instructions given to the bank, the checks involved should have been placed in the account and to the credit of the appellant. These instructions were not followed by respondent. It permitted Hayner either to cash the checks or to place them to his individual account. Under further instructions given the bank, Hayner had a right to draw checks in the name of the appellant against the account into which this money should have been placed. Had the checks been deposited to appellant's credit as per instructions, Hayner might, by virtue of his authority, have withdrawn the money and put it in his own private account and there would have been no liability on the part of the bank, assuming that

it would have been innocent of any wrongdoing on Hayner's part. The only proof of loss to the appellant was that it has never been paid any portion of the sums represented by these checks. The main question is, is the appellant entitled to recover of the respondent on these facts.

There are what we consider one or two less important questions we will first dispose of.

Respondent contends that there is no testimony to show that the appellant had not received from Hayner, or otherwise, the amount of money here sued for. But we think the testimony, while somewhat unsatisfactory, is sufficient in this respect. The president of the appellant was asked: "Do you know whether or not the Rensselaer Valve Company has received the proceeds of these checks (meaning those involved in this suit)? A: Yes, I know that they did not." Practically the same question was asked of the general manager, who answered: "I know absolutely that the Rensselaer Valve Company did not receive the proceeds from those checks." There being practically nothing to dispute this testimony, it is sufficient in that respect to carry the case beyond a nonsuit. It is true that on cross-examination of these witnesses the court refused to permit them to further testify on this point because they had obtained their information from the books of the company. But the testimony which we have quoted was based on assertions of the witnesses that they spoke from personal knowledge. That testimony still stands and was properly received. We cannot say, therefore, that there was no testimony that the appellant had not been paid the amount of the checks in question. Nor did the trial court grant the nonsuit on this ground, but because, having deposited the checks

to the account of appellant, Hayner had authority to check on that account.

Respondent further contends that the judgment should be affirmed because of appellant's conduct with reference to this account, in that it failed to use reasonable diligence in checking it up. It may be doubted whether such a defense is at all material or would tend to excuse respondent from complying with instructions. *Wagner Trading Co. v. Battery Park Nat. Bank,* 228 N. Y. 37. But it is unnecessary for us to pursue this discussion. The same question was involved to exactly the same extent in the case of *Rensselaer Valve Co. v. Union Nat. Bank,* 122 Wash. 494, 210 Pac. 947, 213 Pac. 490, and was there resolved against the respondent. That case arose out of the fact that, subsequent to the transactions here involved, the appellant's account was transferred from the respondent to the Union National Bank of Seattle and the same general course of business was followed. We consider that that case is entirely controlling of this question.

It is further contended that there was not any proof that the money represented by those checks belonged to the appellant. We do not so read the testimony. Besides, the checks were all made payable to the appellant and the presumption would be that they represented money belonging to it.

Let us now discuss what we consider the 'main and fundamental questions. These were also fully involved in the *Union National Bank* case, *supra,* and were there decided against the respondent. Inasmuch, however, as they have been especially stressed here, we are not averse to elaborating somewhat upon what we there said.

It is unquestionably the duty of a bank to faithfully carry out any instructions given it by a depositor concerning his business. In this case the bank had explicit

instructions that checks such as those involved here should be deposited by Hayner to the appellant's account. When Hayner failed to make such deposit, but cashed the checks for his own use, he was at once guilty of an unlawful conversion, and since the bank assisted him in obtaining the money, in direct violation of the instructions given it, though, of course, without intent to do wrong, it would be liable to the appellant. The moment the bank cashed the checks and gave the money directly to Hayner, in violation of instructions, the wrong had been done and the unlawful conversion accomplished, and the bank's liability established.

It is a well settled rule of law that, if a bank has notice that a breach of trust is being committed by the improper withdrawing of funds, it incurs liability, becomes responsible for the wrong done, and may be compelled to replace the funds that it has been instrumental in diverting. Where a bank has knowledge that a fund deposited with it is impressed with a trust, it is liable for permitting its application to the personal account of the depositor, or if the bank pay funds in its possession to one who it knows is not entitled thereto, it has committed a wrong, for which it will be held liable to the true owner, if he has sustained a loss. The following are a few of the leading cases in support of the foregoing proposition: *Duckett v. National Mechanics' Bank of Baltimore,* 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84; *American Exchange Nat. Bank v. Loretta Gold & Silver Min. Co.,* 165 Ill. 103, 46 N. E. 202; *Commercial & Agricultural Bank v. Jones,* 18 Tex. 811; *Niagara Woolen Co. v. Pacific Bank,* 141 App. Div. 265, 126 N. Y. Supp. 890; *Robinson v. Chemical Nat. Bank,* 86 N. Y. 404; *Hope Vacuum Cleaner Co. v. Commercial Nat. Bank,* 101 Kan. 726, 168 Pac. 870; *Allen v. Puritan Trust Co.,* 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C 518, and note; *United States Fi-*

*delity & Guaranty Co. v. Adoue,* 104 Tex. 379, 137 S.
W. 648, 138 S. W. 383; *Wagner Trading Co. v. Battery
Park Nat. Bank, supra.*

The general rule laid down by the foregoing and
other authorities is that where a bank has on deposit
moneys which it knows, or by the exercise of reason-
able care should know, are trust funds, and it know-
ingly permits the trustee to use the moneys for his
private purposes, or in any manner adverse to the in-
terest of the trust, it is liable to the trust estate. The
case of *Duckett v. National Mechanics' Bank of Balti-
more, supra,* is a leading authority. There the facts
were that one Clagett was a trustee for an estate and
a check was made payable to his order as trustee. The
bank permitted him to endorse the check payable to
himself individually and to place the money to his in-
dividual account. Later he appropriated the money to
his own use and the trust estate instituted suit against
the bank. The court, speaking with reference to the
check being made to Clagett as trustee, said:

"This was an explicit notification to the bank that
Clagett was not the actual owner of the money. Know-
ing that the money was not Clagett's, but that it was
payable to him, and to be deposited to his credit as
trustee, the bank had no authority to place it to his in-
dividual credit . . . and if loss ensued by reason
of Clagett drawing the fund out by checks on his per-
sonal account, the bank is liable to make restitution to
the trust estate. The bank in the eye of the law par-
ticipated in the breach of trust of which Clagett was
guilty. In fact, the bank took the first step that ended
in the spoliation of the trust. Its act in placing dis-
tinctly marked trust funds to the personal credit of
Clagett was obviously wrongful, and it must bear the
resulting consequences."

While the cases cited are not directly in point they
are, in principle, controlling. It is true that, in the

case at bar, the bank may not have known that Hayner was obtaining the money on these checks for his own private use, yet, if appellant's testimony be true, it did know that he had no authority to obtain it in the manner he did, and that it had no authority to permit him to so obtain it. There was a safe and sure way in which the bank could have handled this business, and that was to deposit these moneys to appellant's credit according to instructions. If thereafter Hayner drew on that account and used the money for his individual purposes, that was an affair between him and appellant, and in the absence of knowledge of the wrongdoing, the bank would not have been liable. Its error was in permitting Hayner to have the money in the first place. A loss being shown, its liability at once attached.

But respondent very earnestly contends that, if it be admitted that it violated instructions in permitting Hayner to obtain the money on these checks, there is no testimony to show that the appellant suffered any loss because of such violation, and that one whose money has been wrongfully appropriated by another may still not recover unless he shows that the misappropriation or conversion resulted in his damage. Its argument is to the effect that its violation of instructions had nothing to do with appellant's loss; that, had it followed instructions and caused the money to be deposited in appellant's account in the bank, Hayner, by virtue of his authority to check on that account, could in another way have accomplished identically the thing he did accomplish, that is, embezzle the money; that because Hayner had power to do indirectly what he did directly, the violation of the instructions was not the cause of the loss. Since the argument we have asked for additional briefs on this point. We had hoped that counsel would be able to find some case or authority

directly in point, but, in our opinion, none such has been cited.

The fact that Hayner had power to draw checks against the appellant's account and thus might, in that manner, have obtained the very moneys the respondent paid to him directly will not relieve the bank. It committed its error in violating its instructions. What might or might not have happened had it lived up to the instructions is immaterial. The bank having assisted Hayner to get the money, we will not speculate whether he might, would or could have obtained it in some other manner. Manifestly, one of the reasons the appellant had for insisting that checks made payable to it should be passed to its account was that it might, in that manner, know when payments had been made by contractors. For illustration, if a contractor who had bought some of appellant's products paid therefor by giving Hayner a check payable to the appellant and that check had been passed to its account, then it could easily and readily know that the payment had been made, but if the check was permitted to be cashed by Hayner or placed to his own credit without passing it through the appellant's account, it would have no way of knowing the payment had been made, and an excellent opportunity would be given Hayner to do the very thing he did—embezzle the appellant's money. When appellant had proved its instructions to respondent concerning these checks and that the moneys represented by them had been paid to Hayner in cash or put to his credit, contrary to instructions, and that it had not received the money, or sums in equal amount, it had made a case which was sufficient to put the respondent upon proof. The mere fact that Hayner had authority to draw checks on appellant's bank account and thereby indirectly obtain its money, does not nega-

tive the idea that its loss resulted from the failure of respondent to follow instructions.

The only case we have found touching this question is *Duckett v. National Mechanics' Bank of Baltimore, supra.* There, as here, the bank claimed that its violation of duty was not the cause of the loss to the trust estate, because, had the money been placed to Clagett's account as trustee, he, acting in that capacity, would have had the right to draw the money out and apply it to any use, and the bank would not be liable if it did not have notice. Answering this contention, the court said:

"It is no answer to say that had the bank obeyed the direction given to it, and had it opened an account in the name of Clagett as trustee, and credited that account with these funds, still Clagett could have withdrawn them on checks appropriately signed, and could then have misapplied the money without involving the bank in any liability. This is no answer, simply because what might have been done was not done. Had the bank opened the account for this fund in the name of Clagett, trustee, instead of entering it to the credit of his personal account, it would have done what it was its plain duty to do, and it would not have been guilty of the error which it did commit. Had it done its duty, and had Clagett afterwards withdrawn the money, as he might have done, and had he then misapplied it without the cooperation of the bank, there would have been no liability incurred by the bank at all. But this was not done, and the failure of the bank to do what it ought to have done cannot be treated as tantamount to the thing that it did do unless contraries are equivalent of each other. What it ought to have done is not what it did do, and it cannot escape liability upon the mere conjecture that what did happen to the funds might have also happened had the bank not been derelict in its dealings with those funds."

We are confident that the appellant's testimony was sufficient to carry the case beyond a nonsuit. The

judgment is reversed and the cause remanded for trial.

MAIN, C. J., MACKINTOSH, HOLCOMB, TOLMAN, MITCHELL, and PEMBERTON, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. The controlling facts of the case are in the main not in dispute, and are well stated in the majority opinion. I will, however, call attention to one matter on which I think the evidence does not justify the conclusion reached.

The majority, if I correctly interpret their opinion, conclude that there is competent evidence in the record showing that the appellant did not receive the proceeds of the checks upon which the action is founded. To my mind, this is far from demonstrated. It is true that the president of the appellant, as well as its general manager, on direct examination gave the testimony quoted in the opinion. But on their cross-examination, when required to state the sources of their information, it so conclusively appeared that these sources did not furnish them with knowledge of the fact, that the trial court on motion struck all of their evidence on the question. But, more than this, I think the testimony otherwise in the record shows that they not only did not know whether the asserted fact was true or false, but that it conclusively shows that there is now no known source from which the fact can be determined. The manner in which the business dealings between the appellant and its agent Hayner were conducted is but meagerly depicted in the record. But enough is shown to indicate that Hayner, when he made sales of the appellant's manufactured products, sent to the appellant's house at New York an itemized statement of the articles sold, and that subsequently he made remittances, specifying the particular items to which the remittances were to be credited as payment. Hayner at

all times had a large individual account with the bank and many of these remittances were made from his individual account. Indeed, the bank statement in the record, introduced by the appellant, shows that Hayner made no deposits in the appellant's name subsequent to November 20, 1919, although it appears, and the appellant's president testifies, that a number of remittances were made to the appellant subsequent to that time. As these remittances were made from the account into which the proceeds of the checks in suit were deposited, it seems to me manifest that no one can now know "absolutely that the Rensselaer Valve Company did not receive the proceeds from these checks." It may be that the appellant did not receive remittances for credit upon the particular items of property for which the checks were given in payment, but this is not the fact to which the witnesses purported to testify, and is, of course, likewise not the fact the majority find to be proven. In my opinion, therefore, the trial court committed no error in striking the testimony, and it is incorrect to say that the "testimony still stands and was properly received."

The action brought by the appellant against the bank, it will be remembered, is one at law for a conversion of the proceeds of the checks. In its evidence the appellant contented itself with a showing of the loss and the bank's dereliction only. It did not show, nor did it attempt to show, that the dereliction in any way aided or abetted Hayner in perpetrating the fraud which occasioned the loss. In other language, the appellant conceived that it was sufficient for its purposes to show the dereliction and the loss, without showing that the one in any way contributed to the other.

I cannot agree with the majority that this is a sufficient showing to charge the bank with liability. In

the opinion, the rule of liability is stated in the following language:

"It is unquestionably the duty of a bank to faithfully carry out any instructions given it by a depositor concerning his business. In this case the bank had explicit instructions that checks such as those involved here should be deposited by Hayner to the appellant's account. When Hayner failed to make such deposit, but cashed the checks for his own uses, he was at once guilty of an unlawful conversion, and since the bank assisted him in obtaining the money, in direct violation of the instructions given it, though of course, without intent to do wrong, it would be liable to the appellant. The moment the bank cashed the checks and gave the money directly to Hayner, in violation of instructions, the wrong had been done and the unlawful conversion accomplished, and the bank's liability established."

In my opinion, the rule stated is not accurate even with respect to Hayner. The mere wrongful misuse of another's property with nothing more does not give rise to an action of conversion. The misuse must result in a loss of the property to the complainant before an action of conversion can be founded thereon. If this were not so, a recovery could be had as for a conversion of property even though the misappropriator subsequently accounted to the owner for the property. There is, of course, sufficient in the record to show a conversion of the appellant's funds by Hayner, since it was shown that he had been intrusted with the funds and had failed to account for them, but my point is that the acts recited by the majority, on which their conclusion is made to rest, do not constitute actionable conversion.

The rule becomes important when we come to consider the bank's participation therein. The bank, it must always be borne in mind, did not misappropriate the funds. On the contrary, it accounted fully either to Hayner or to the appellant for all of the appellant's

property intrusted to it. Its dereliction, and its sole dereliction, consisted in the fact that it did not follow strictly the appellant's instructions as to the manner in which it was required to deal with the property. I concede, of course, that to constitute conversion there need not be a manucaption, an asportation, or an appropriation of the property of another by the one charged with the conversion, and that mere wrongful or unauthorized acts with respect to it may sometimes amount to a conversion. But I do most emphatically insist that such wrongful or unauthorized acts, to give arise to an action of conversion, must in themselves cause a loss of the property to the owner, or that they must in some way aid in or contribute to the loss. So in this instance, since it was Hayner and not the bank who misappropriated the funds, the bank cannot be held to answer for the misappropriation, unless its acts in relation thereto in some way aided Hayner in the misappropriation, or in some other way contributed to the appellant's loss, and in the record I can find nothing that justifies the conclusion that its acts did so aid or contribute.

The burden was upon the plaintiff to show this fact. As stated in 38 Cyc. 2078:

"In trover the burden of proof is on the plaintiff, and it remains with him throughout as to traversed material averments of his declaration, petition, or complaint."

It being, therefore, an essential element of the appellant's proofs to show that the acts of the bank contributed to its loss, the appellant's failure to prove the fact was a failure to prove its cause of action, and it follows that the trial court did not err in so concluding.

The cases cited by the majority I do not feel called upon to review. In the main, as I view them, they have no direct bearing on the question, and are not incon-

sistent with the rule as I conceive it to be. The case from which the quotation is made is, I think, also without application to the facts here shown. The court was there dealing with a trust fund, whereas, in the present instance, there was no trust fund involved. Had the bank caused the checks to be deposited in the way directed, the relation of debtor and creditor would have existed between the bank and the appellant, and not that of trustee and *cestui que trust*. Its relation to the appellant is not different with respect to the fund, merely because it did not strictly follow instructions with regard to it. But if this be not sufficient to distinguish the cases, I cannot subscribe to the quoted doctrine as a rule of universal application. To say that one is responsible in conversion to another for disregarding instructions with relation to that other's property, without a further showing that the disregard in some way caused or contributed to the loss of the property, is, to my mind, to lose sight of the legal principles upon which such actions are founded. There was, therefore, in my opinion, no error in the conclusion reached by the court, and its judgment should be affirmed.

PARKER, J., concurs with FULLERTON, J.