# Richmond.

BANK OF OCCOQUAN, INCORPORATED, v. W. O. BUSHEY.*

March 19, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

*See *Bank of Occoquan* v. *Davis,* 155 Va. 642, 156 S. E. 367.

The opinion states the case.

*Walter Tansill Oliver* and *Thos. H. Lion,* for the plaintiff in error.

*T. E. Didlake,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

W. O. Bushey brought an action against the Bank of Occoquan and obtained a verdict for $3,971.05, with interest thereon from August 25, 1927, subject to a credit of $800.00, as of October 18, 1926. A judgment was entered upon the verdict and the bank applied for and obtained a writ of error.

W. O. Bushey, the defendant in error, will be referred to as the plaintiff, and the Bank of Occoquan, Incorporated, the plaintiff in error, as the bank.

The facts are brief and in the main are not controverted. The plaintiff, in 1922, became a depositor in the defendant bank and his account with the bank was quite active. One Barbee was the cashier, and had been so employed for several years prior to 1922. His services were dispensed with by the bank on August 11, 1926, on account of certain irregularities, and he was succeeded on that date by one Brunt, who from that time on occupied the office of cashier. During the time of Barbee's connection with the bank he was in entire charge of the bank's business. The plaintiff and Barbee were well acquainted with each other and the plaintiff reposed confidence in him. The plaintiff resided about ten miles from the bank's place of business, was a country merchant and of limited education.

Three debit slips and one check were charged to his account in the bank in the ordinary course of business, so far as the bank was concerned, and it is out of these charges to the plaintiff's account this litigation grows. Specifically, the charges against his account embraced one debit slip of $800.00, charged on November 22, 1924; one for $1,100.00, charged on December 30, 1924, and one for $700.00, charged on September 10, 1925. A check for $1,371.05 was charged February 25, 1924. The aggregate amount of the charges, or $3,971.05, was withdrawn from the plaintiff's account, by Barbee, the cashier of the bank, and loaned to the Swan Point Canning Company, a partnership composed of Barbee and Dr. Hornbaker, and, as its name indicates, was engaged in the canning business.

On August 11, 1926, the day on which Barbee was discharged by the bank, he wrote the plaintiff a letter and enclosed a note bearing date on August 1, 1926, made by the Swan Point Canning Company, payable to the plaintiff in six months for $3,971.05, which embraced the three amounts of the debit slips and the amount of the check. A bank statement was also enclosed in the letter together with the returned checks and debit slips, which had been paid by the bank. The letter is as follows: "The enclosed note in your statement is the amount due you, which I have used for you, which is drawing 6 per cent. I can arrange for you to use this money any time you need it. Hope you will not think I have taken undue advantage of you by doing this. I will see you in a few days."

The plaintiff testified that he had never authorized Barbee to lend his money to the Swan Point Canning Company, but in the brief filed by his counsel and in his testimony he admits that he knew on August 11, 1926, that his money had been loaned to this company. It is further shown by the testimony of the plaintiff that from the time he received the letter, the note and the bank statement on August 11, 1926, until his

counsel wrote the bank on August 25, 1927, demanding payment of the amount which had been withdrawn from his account, though he had full knowledge of the facts, he made no complaint or demand on the bank, but on the other hand, in October, 1926, accepted from the Swan Point Canning Company, through Barbee, a payment of $800.00 on the note, at which time a credit for that amount was written on the back of the note by Barbee. His first complaint to the bank was made by his attorney more than a year later.

The foregoing facts are not in dispute and clearly appear from the testimony of the plaintiff himself.

There are four assignments of error, but we think it is only necessary to ascertain whether in any event the verdict can be sustained under the law as applied to the undisputed facts.

We have narrated the facts which we think are controlling in deciding the case. In view of the verdict of the jury, we do not undertake to reconcile the conflicting testimony of witnesses, but rely solely on the facts developed from the plaintiff's own testimony, and from it alone it clearly appears that the plaintiff not only failed to repudiate the loan to the Swan Point Canning Company, made by Barbee, but fully acquiesced therein, recognized it, consented to it, and made Barbee's acts in this connection his own.

On August 11, 1926, a bank statement, canceled checks and the debit slips in question were received by Bushey. The statement revealed the true condition of his account and the correct balance in the bank on that date. Upon receipt of the statement and the vouchers and debit slips, it was his legal duty to examine them with reasonable diligence, detect errors and irregularities and report them, within a reasonable time, to the bank. *Brown* v. *Lynchburg National Bank,* 109 Va. 530, 64 S. E. 950, 17 Ann. Cas. 119; *Trust Company of Norfolk* v. *Snyder,* 148 Va. 381, 138 S. E. 477.

For more than a year he failed to report the irregularities

to the bank, though during all of this time he must have known of them. In addition to his long silence, he held the Swan Point Canning Company note for the same period of time, as his own, received a part payment thereon and applied it directly to the partial satisfaction of the note. If Barbee was unauthorized to charge the debit slips to Bushey's account, withdraw the funds and lend them to the Swan Point Canning Company, Bushey, by his long acquiescence in and ratification of Barbee's acts in this connection, has made them his own and is bound by them.

It is urged that knowledge of the unusual and irregular acts of Barbee in connection with the withdrawals of the plaintiff's funds would be imputed to the bank and that it would be estopped to deny its liability to the plaintiff.

The answer to this argument is that Barbee's acts in this connection were beyond the scope of his authority as cashier. The bank neither authorized nor ratified them. It received no benefit whatever through the transaction and was entirely ignorant of it until long after it had taken place. The withdrawals were properly charged on the books in the ordinary course of business, and so far as the bank was concerned the transaction was regular in every respect.

Knowledge of a cashier's fraudulent and irregular acts, done for his own personal benefit and against the interest of the bank, cannot be imputed to the bank.

The plaintiff makes the point that there was no formal joinder of issue in the court below, because the defendant did not file a plea of the general issue. No doubt if this objection had been seasonably made in the lower court, the defendant would have filed such a plea. However, we do not think there is any merit in the point because the trial of the case proceeded just as though there had been formal joinder of issue. The defendant, without objection from the plaintiff, introduced evidence as though the pleadings had been perfected, and the plaintiff, instead of objecting to any evidence being introduced

by the defendant under the general issue, joined with him and introduced his evidence to rebut the evidence which the defendant had introduced. It is now too late to raise the point.

In the case of *Deatrick* v. *State Life Insurance Company*, 107 Va. 602, 59 S. E. 489, 490, we find this statement of the law which seems to be directly opposed to the contention of counsel for the plaintiff, Bushey: "The first error assigned is that no issue was joined upon the pleas; and, strictly speaking, this seems to be true. There was no formal joinder of issue, but it appears that the court, the plaintiff and the defendant, dealt with the case as though the pleadings had been perfected. The evidence was introduced, and the case argued by counsel and considered by the court, just as would have been done had the utmost formality in pleading been observed. It is certain, therefore, that the omission caused no injury to the plaintiff."

The verdict of the jury is set aside, the judgment reversed, and final judgment is now rendered in favor of the defendant bank.

*Reversed.*