[No. 25421. Department One. March 27, 1935.]

GEORGE Y. MOODY, *as Guardian, et al., Respondents,* v.
CLARKE COUNTY BANK OF WASHOUGAL *et al.,*
*Appellants.*[1]

*Geo. C. Ellsbury (Newton & Williams,* of counsel),
for appellants.

*Hall & Schaefer* and *Crass & Hardin,* for respondents.

TOLMAN, J.—This is an action to recover funds deposited to the credit of a guardian who was likewise the managing officer of the bank in which the funds were deposited. The case was tried to the court upon an agreed state of facts, resulting in a recovery as demanded in the complaint. The defendants have appealed.

The admitted facts, so far as now material, seem to be substantially as follows: On September 12, 1930, one O. Hiim was, by the superior court for Skamania county, appointed guardian of the estate of three minor

[1]Reported in 42 P. (2d) 803.

children; and, as such guardian, he came into possession of a fund amounting to $1,349.01 belonging to the estate of the minors. The decree appointing the guardian provided that he should use the funds so committed to his charge solely for the care, maintenance and education of the minors under the supervision of the court. This money was by the guardian deposited in the Clarke County Bank of Washougal to the credit of the minors' estate.

The records of the bank show that, on November 28, 1930, a withdrawal slip was made, signed "Pohl Minors, O. Hiim, Guardian" for the sum of one thousand dollars, and with it was presented a deposit slip so made out as to direct the amount of the one thousand dollars withdrawn from the minors' account to be credited to the account of Mr. and Mrs. O. Hiim in the same bank. Thereafter, on January 26, 1931, a like withdrawal slip, in the handwriting of O. Hiim and signed by him as guardian for the sum of one hundred dollars, was made out and filed in the records of the bank, together with a deposit slip, likewise written by O. Hiim, directing the amount so withdrawn to be deposited and credited to the account of the Clark County Agricultural Credit Corporation, of which O. Hiim was an officer. No order of the superior court was ever made authorizing either of these transactions, and the eleven hundred dollars represented by these two withdrawals was afterwards disbursed by O. Hiim for his own purposes, but not in any manner for the benefit of the minors or their estate.

During all of the time covered by these transactions, O. Hiim was the cashier of the Clarke County Bank, was in direct charge of the bank's ordinary operations, and all other employees of the bank were under his

control and supervision. He alone supervised and controlled the receipt of deposits, the transfer of credits and the general business of the bank, subject only to the supervision of the bank's board of directors.

Thus it will be seen that the only question presented is whether or no a bank is liable for the acts of its cashier who, outside of and beyond the scope of his authority and duty as cashier, and presumably for his personal benefit, wrongfully withdraws and misappropriates trust funds on deposit with the bank of which he is the managing officer.

The rule established by the great weight of authority is to the effect that a bank which permits a trustee to transfer known trust funds to his own private account does not itself become liable merely because it permits such a transfer. *Kendall v. Fidelity Trust Co.*, 230 Mass. 238, 119 N. E. 861; *Bischoff v. Yorkville Bank*, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; *Miami County Bank v. State ex rel. Peru Trust Co.*, 61 Ind. App. 360, 112 N. E. 40.

In order that a bank may be held liable, it must appear that, in addition to merely permitting such transfer, it, the bank, actually participated in some manner in the misappropriation. The rule is tersely stated as follows:

"A bank is liable when it has actual or constructive knowledge that a fraud is being or is about to be perpetrated by the fiduciary, and assists him in making a misappropriation of the trust funds. It is held that to render the bank liable it must have actually participated in the misappropriation, or with knowledge reaped some benefit therefrom, as by itself appropriating the money or receiving it in payment of some individual indebtedness of the fiduciary to it, and thereby rendering itself liable as trustee or otherwise. The mere ordinary benefits of the account of the depositor will not be sufficient to so charge it." 5 Michie on Banks and Banking, 134, § 57e.

The reasons for the rule appear in the language which we now quote:

"In the other cases cited defendants were rendered liable on principles of equity and justice, for having of their own motion or by collusion with their depositor, appropriated the trust funds to the payment of some individual liability or indebtedness of the depositor to them. We are cited to no authority for holding a bank liable for a breach of trust by its depositor under any other circumstances. For ought a bank would know a check though payable to its depositor in some representative or fiduciary character, the money would belong absolutely to him, and represent money already paid out by him in discharge of his fiduciary liability; the bank cannot assume that money paid out on checks of a fiduciary is being misappropriated, and it has the right to assume that it is being properly appropriated, at least until it has actual notice to the contrary. To place the burden of supervising all such accounts upon a bank of deposit would be unreasonable, and one which few institutions, if any, would be willing to assume; indeed it would be unbearable, and to do so would in many cases deprive all fiduciaries of banking privileges, and work a detriment to estates and fiduciaries generally." *United States Fidelity & Guaranty Co. v. Home Bank For Savings*, 77 W. Va. 665, 88 S. E. 109."

Participation in the sense here used has been defined by the courts:

"The Standard Dictionary, and a number of other dictionaries consulted, define 'participate' as meaning 'to receive or have a part or share of; to partake of; experience in common with others; to have or enjoy a part or share in common with others; partake; as to participate in a discussion;' 'to take a part in; as to participate in joys or sorrows.'" *Bew v. Travelers' Ins. Co.*, 95 N. J. Law 533, 112 Atl. 859, 14 A. L. R. 983.

Late cases reiterating this rule are *Clarke v. Public National Bank & Trust Co.*, 259 N. Y. 285, 181 N. E.

574, and *Newton v. Livingston County Trust Co.*, 231 App. Div. 355, 247 N. Y. Supp. 121.

A recent case, similar in all its material facts, which we think correctly discriminates between what is and what is not participation by the bank, has been decided by a Federal district court in *Martin v. First National Bank of Rush City,* 51 Fed. (2d) 840. Though by a district court, we think the decision a wise and logical one, and, in the absence of anything to the contrary, have no hesitancy in following it. There, the guardian, Ericson, was also the managing officer of the bank. For the trust funds, withdrawn under conditions like those here shown, which did not go to the bank to pay Ericson's personal debt, the bank was held not liable; while like funds withdrawn in the same manner and paid to the bank in discharge of Ericson's debt were held to create a liability against the bank.

No case has been cited, and we have found none, which holds that anything less than a receipt of the funds by the bank in payment of the personal debt of the trustee is participation. But, even though participation may be something less than the actual obtaining of the funds from the wrongdoer, still we find nothing of that nature here.

As participation has already been defined, it seems clear that the bank in no way participated in the wrongful withdrawal of the funds.

Respondents seem to place reliance upon our cases of *Rensselaer Valve Co. v. Union National Bank,* 122 Wash. 494, 210 Pac. 947, 213 Pac. 490, and *Rensselaer Valve Co. v. National Bank of Commerce of Seattle,* 129 Wash. 253, 224 Pac. 673; but those cases both rest upon the disregard and violation by the bank of explicit instructions, and therefore they are not at all in point.

The guardian, though cashier of the bank, acted wholly outside the scope of his authority as cashier and solely for his individual advantage in withdrawing the money, and therefore could not, by that act, bind the bank. *Knobeloch v. Germania Savings Bank,* 50 S. C. 259, 27 S. E. 962; *Bank of Occoquan v. Bushey,* 156 Va. 25, 157 S. E. 764; *American Surety Co. v. Pauly,* 170 U. S. 133, 18 S. Ct. 552; *Southern Trust & Commerce Bank v. San Diego Savings Bank,* 60 Cal. App. 215, 212 Pac. 385; *Thomson-Houston Electric Co. v. Capitol Electric Co.,* 65 Fed. 341.

We are constrained to hold that, under the facts here shown, the bank is not liable.

The judgment is reversed, with directions to dismiss the action, but without prejudice to the presentation and allowance of a claim for any excess in the account over and above the $1,100 misappropriated by the guardian.

MAIN, BEALS, and GERAGHTY, JJ., concur.

MILLARD, C. J., dissents.