[No. 50511–0. En Banc. January 10, 1985.]

J. DAVID SMITH, *as Guardian, Petitioner,* v. OLYMPIC BANK, *Respondent.*

*Wilfred E. Schlicker,* for petitioner.

*Newton, Newton & Kight,* by *Thomas D. Adams,* for respondent.

DORE, J.—We hold that, where a bank allows a check that is made payable to a guardian to be deposited in a guardian's personal account instead of a guardianship account, the bank is not a holder in due course under the Uniform Commercial Code because it has notice that the guardian is breaching his fiduciary duty.

FACTS

Charles Alcombrack was appointed guardian for his son Chad Stephen Alcombrack who was then 7 years old and the beneficiary of his grandfather's life insurance policy. The insurance company issued a check for $30,588.39 made payable to "Charles Alcombrack, Guardian of the Estate of Chad Stephen Alcombrack a Minor". The attorney for the son's estate directed the father to take the check, along with the letters of guardianship issued to the father, to the bank and open up a guardianship savings and checking account. The father, however, did not follow the attorney's instructions. Instead, he took the check, without the letters of guardianship, to the bank and opened a personal checking and a personal savings account. The following was printed on the back of the check:

> By endorsement of this check the payee acknowledges receipt of the amount thereof in full settlement of all claims resulting from the death of Roy Alcombrack, certificate holder under Group Life Policy No. 9,745,632

> /s/ Charles Alcombrack
> Guardian of the Estate of Chad
> Stephen Alcombrack, a minor

Clerk's Papers, at 58. Despite the above written notice that the check was payable to the father in his guardianship capacity, the bank allowed the father to place the entire amount in newly opened personal accounts. On the same day that the father opened his accounts, the attorney for the guardian called a trust officer from Olympic Bank and inquired as to the fees the bank charged for maintaining guardianship accounts. Responding to the attorney's questions, the trust officer wrote the attorney, specifically mentioning the "Estate of Chad Alcombrack".[1] Clerk's Papers,

---

[1] The following is the letter sent by the trust officer to the guardian's attorney:
"October 30, 1975

"Mr. Charles A. Schaaf, Attorney
"Suite 707, Hoge Building
"Seattle, Washington 98104

at 60.

The father, and later his new wife,[2] used all but $320.60 of the trust money for their own personal benefit. Bank records disclosed how the estate money was withdrawn: five withdrawals were made to cash or into the father's checking account (total—approximately $16,000); one withdrawal paid off an unsecured personal loan made by the bank to the father (approximately $3,000); seven debits to the account were made by the bank exercising its right of offset to make payments on or pay off personal loans by the bank to the father (total—approximately $12,500).

After the depletion of the son's estate, J. David Smith was appointed successor guardian. He received a judgment against the father and instituted this suit against the bank. The trial court granted summary judgment in favor of the bank. The Court of Appeals reversed and remanded, holding that the trial court should determine the factual issue whether the bank was a holder in due course.

## ARGUMENT

Olympic Bank claims that it is a holder in due course (HIDC) and, as such, is not subject to the claims of the petitioner.[3] In order to qualify as a HIDC, the bank must

---

"Reference: Estate of Chad Alcombrack

"Dear Mr. Schaaf:

"This is a follow up to our telephone conversation of October 28, 1975. The information you requested on the performance of our common trust funds will be available in about four weeks. October 31st is the end of our fiscal year. If this is not too long for you to wait, please let me know and I will send you a copy of our annual report.

"Our fee for handling a Guardianship account is, eight tenths (8/10) of one percent (1%), minimum of $350.00 per year."

[2]The father remarried and his new wife was authorized to write checks against the checking account. She wrote a total of 79 percent of the checks drawn on the account.

[3]RCW 62A.3–305 sets forth the rights of a holder in due course:

"To the extent that a holder is a holder in due course he takes the instrument free from

meet five requirements. It must be (1) a holder (2) of a negotiable instrument, (3) that took the instrument for value (4) in good faith and (5) without notice that it was overdue, dishonored, or of any defense or claim to it on the part of any person. RCW 62A.3–302(1)(a)–(c). *See also* J. White & R. Summers, *Uniform Commercial Code* § 14–2 (2d ed. 1980). We need not decide whether the bank met the first four conditions as we hold that the bank took the check with notice of an adverse claim to the instrument and, therefore, is not a holder in due course. Consequently, the bank is liable to the petitioner.[4]

 A purchaser has notice of an adverse claim when "he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty." RCW 62A.3–304(2). Thus, the issue raised by this case is whether the bank had knowledge that the guardian was breaching his fiduciary duty when it allowed him to deposit a check, made payable to him in his guardianship capacity, into his personal accounts. As to this issue, *Von Gohren v. Pacific Nat'l Bank,* 8 Wn. App. 245, 505 P.2d 467

---

"(1) all claims to it on the part of any person; and

"(2) all defenses of any party to the instrument with whom the holder has not dealt except

"(a) infancy, to the extent that it is a defense to a simple contract; and

"(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

"(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

"(d) discharge in insolvency proceedings; and

"(e) any other discharge of which the holder has notice when he takes the instrument."

[4]RCW 62A.3–306 sets forth the liabilities of one who accepts a check and who is not a holder in due course.

"Unless he has the rights of a holder in due course any person takes the instrument subject to

"(a) all valid claims to it on the part of any person; and

"(b) all defenses of any party which would be available in an action on a simple contract; . . ."

(1973) is persuasive and controlling. In *Von Gohren,* it was held that a bank had notice that an employee was breaching her fiduciary duty when it allowed her to deposit third party checks payable to her employer in her personal account. The bank was put on notice despite the fact that the employer had authorized the employee to draw checks against his account and also to endorse checks made payable to him and deposit such checks into his account. The court held that notice need not always consist of actual knowledge of a breach of a fiduciary duty, but can be predicated upon reasonable commercial standards. The court concluded by stating:

> It is our view that since defendant had notice of the claim by virtue of RCW 62A.3–304(2), and since it is undisputed that defendant did nothing to investigate Mrs. Martin's authority to negotiate checks payable to her employer, we must hold as a matter of law it did not act in accordance with reasonable commercial standards.

*Von Gohren,* at 255. The same conclusion is mandated in the present case.

Here, the bank knew it was dealing with guardianship funds. The check was payable to the father as guardian and not to him personally. The father endorsed it in his guardianship capacity. The bank received a call from the guardian's attorney inquiring about the fee the bank charged for guardianship accounts, and a trust officer for the bank replied in a letter referring to the "Estate of Chad Alcombrack".

Reasonable commercial practices dictate that when the bank knew that the funds were deposited in a personal account instead of a guardianship account, it also knew that the father was breaching his fiduciary duty. The funds lost the protection they would have received in a guardianship account when they were placed in a personal account. If the funds had been placed in a guardianship account, the bank would not have been allowed to exercise its setoff rights which amounted to approximately $12,500. *Pitzen v. Doubleday,* 5 Wn.2d 370, 105 P.2d 726 (1940). Nor would it

have been permitted to accept a check, drawn on the guardianship account, from the father in satisfaction of the father's unsecured personal loan in the amount of approximately $3,000. *Canyon Lk. Bank v. New Braunfels Utils.*, 638 S.W.2d 944 (Tex. Ct. App. 1982). Nor could the father, or bank, have authorized his new wife to write checks against the guardianship account without court approval. *See* RCW 11.88.010; *In re Gaddis*, 12 Wn.2d 114, 120 P.2d 849 (1942). A fiduciary has a duty to ensure that trust funds are protected. *See, e.g., Bowman v. Butler*, 98 N.M. 357, 648 P.2d 815 (Ct. App. 1982); *New York v. Retirement Bd.*, 116 Misc. 2d 496, 455 N.Y.S.2d 703 (1982). Here, the father breached his duty.

While this is the first time, under the Uniform Commercial Code, that we have held a bank liable for allowing a guardian to deposit trust funds in a personal account, we have held a bank liable in a pre–Code case for allowing a trustee to breach his fiduciary duty. *Rensselaer Valve Co. v. National Bank of Commerce*, 129 Wash. 253, 224 P. 673 (1924). In addition, other jurisdictions have held banks liable under similar circumstances using the Code, *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481 (Mo. 1980); *In re Quantum Dev. Corp.*, 397 F. Supp. 329 (D.V.I. 1975), *aff'd on other grounds*, 534 F.2d 532 (3d Cir. 1976), and without using the Code, *Duckett v. National Mechanics' Bank*, 86 Md. 400, 38 A. 983 (1897). The policy reasons for holding a bank liable are compelling—especially in the situation presented in this case. The ward has no control of his own estate. He must rely on his guardian and on the bank for the safekeeping of his money. In order to protect the ward, the guardian and bank must be held to a high standard of care. For the guardian, this means that he must deposit guardian funds in a guardianship account. For the bank, it means that when it receives a check made payable to an individual as a guardian, it must make sure that the check is placed in a guardianship account. This will not

place an undue burden on either banks or guardians and will have the beneficial effect of protecting the ward.

### CONSUMER PROTECTION LAW

█ Petitioner asserts that the bank's actions violated the Consumer Protection Act, RCW 19.86.020. We do not agree. In order for a private individual to bring an action under the Consumer Protection Act, the conduct complained of must (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest. *Anhold v. Daniels*, 94 Wn.2d 40, 614 P.2d 184 (1980). One prerequisite in finding an impact on public interest is a determination that this defendant had induced this plaintiff to act or to refrain from acting. *Anhold,* at 46. The plaintiff here is the ward. The bank's actions consisted of allowing the guardian to deposit the insurance check into his personal accounts. While this action was wrong, it neither induced the ward to act nor to refrain from acting. On this particular fact presentation, we are not prepared at this time to embrace the provisions of the Consumer Protection Act.

### PREJUDGMENT INTEREST

█ Finally, petitioner is entitled to prejudgment interest since the amount of money for which the bank is liable is fully liquidated. *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968). The rate of prejudgment interest is governed by RCW 19.52.010 which was amended on July 21, 1981 to allow a rate of 12 percent interest instead of 6 percent.

### CONCLUSION

The Court of Appeals is reversed and this cause is remanded to the trial court to render a judgment in favor of the guardian in the amount of $30,267.79 plus prejudgment interest at the rate of 6 percent per annum from October 28, 1975 to July 21, 1981; commencing July 22, 1981 such judgment shall accrue interest at the rate of 12

percent per annum. Since we found no violation of the Consumer Protection Act, we deny guardian attorney fees.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.