[No. 50267-1-I.   Division One.   May 12, 2003.]

MICHELLE M. RICHARDS, *Appellant*, v. SEATTLE METROPOLITAN CREDIT UNION, *Respondent*.

*Mark S. Elgot*, for appellant.

*Andrew R. Gala* and *Steven A. Miller* (of *Schwabe Williamson & Wyatt*), for respondent.

BAKER, J. — Michelle M. Richards (Michelle) sued Seattle Federal Credit Union[1] (the credit union) for allowing her father (Richards) to deposit a check issued for her benefit into his personal account. Because the credit union had inquiry notice that Richards was breaching his fiduciary duty, the credit union should not have assisted him by depositing the funds in his personal account. But because the credit union's actions did not cause Michelle's loss, except for the $100 Richards took when he cashed the check, the credit union is not liable for Richards' subsequent misappropriation of the remainder of the funds. We affirm the summary judgment granted in favor of the credit union, except as to the misappropriated $100.

I

Michelle Richards was the only child of Allen and Maria Richards. They divorced in 1991. Shortly after their divorce, Michelle's mother was killed in a boating accident. A court then appointed Richards personal representative of her estate. Michelle was the estate's sole beneficiary.

The probate court ordered that Richards place the proceeds from a life insurance policy into a blocked account at U.S. Bank until Michelle reached majority. The court approved two withdrawals from this account between 1991

---

[1] Seattle Federal Credit Union is now known as Seattle Metropolitan Credit Union.

and 1995. In 1995 the court allowed Richards to withdraw the remaining funds. A portion of these funds was used to reimburse Richards for expenses. The court directed Richards to place the balance, $20,500.91, "into an account at Seattle Federal Credit Union in the name of Allen L. Richards, Guardian of Michelle M. Richards."

The court order allowed Richards to obtain three cashier's checks from U.S. Bank. Each check denoted Michelle Richards as the purchaser. The two checks reimbursing Richards listed Allen Richards on the "pay to the order of" line. But the third check (hereinafter the check), to be deposited at Seattle Federal Credit Union in Michelle's guardianship account, listed Seattle Federal Credit Union as the payee.

Richards presented the third check to the credit union, received $100 cash back, and deposited the remaining funds into his personal account there. Three days later, he withdrew the remaining funds and opened a Uniform Transfer to Minors Act (UTMA) account at another bank. Eventually, he misappropriated these funds.

Michelle sued Richards for breaching his fiduciary duty as her guardian and obtained a judgment against him. She also brought this separate action against the credit union for allowing Richards to deposit the check into his personal account. The court granted the credit union's second request for summary judgment, and Michelle appeals.[2]

## II

██ ██ A fiduciary is a person who, on account of his relationship with another person (the beneficiary), is both authorized to act for the beneficiary and owes a duty of

---

[2] Seattle Federal Credit Union appeals the trial court's denial of an earlier motion for summary judgment. In light of our ruling on Michelle's appeal, we do not address the credit union's appeal.

loyalty to the beneficiary.[3] As Michelle's guardian, Richards owed her a fiduciary duty of care.

■ ■ Under certain circumstances a beneficiary may hold a bank liable for a fiduciary's misappropriation of trust funds.[4] RCW 62A.3-307 explains circumstances where a bank may be liable because it is on notice that it is assisting a fiduciary in breaching his or her duty. For example, a bank may be liable for allowing a fiduciary to cash a check intended for his beneficiary, or for allowing him to deposit the check into his personal account. Under such circumstances a beneficiary may sue for the resulting loss.

Under RCW 62A.3-307(b)(4), when "an instrument is issued by the represented person . . . to the [bank] as payee, the [bank] has notice of the breach of fiduciary duty if the instrument is . . . deposited to an account other than an account of the fiduciary, as such, or an account of the represented person."[5] The fact that the check was drawn as a cashier's check payable to the credit union and showing Michelle as the purchaser was enough to give the credit union notice of Richards' fiduciary status.

In *Smith v. Olympic Bank*,[6] a bank was held liable for conversion because it permitted a guardian to deposit into his personal account an insurance check payable to him in his fiduciary capacity.[7] The bank could not be a holder in due course because these circumstances gave notice that

---

[3] *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, L.L.P.*, 110 Wn. App. 412, 433-34, 40 P.3d 1206 (2002).

[4] New U.C.C. § 3-307 (codified at RCW 62A.3-307) adopts the results from a number of cases holding banks liable for depositing funds in a fiduciary's personal account. The provisions of former RCW 62A.3-306 (1965) concerning fiduciary duty are now codified at RCW 62A.3-307. For cases applying former RCW 62A.3-304, *see, e.g., Smith v. Olympic Bank*, 103 Wn.2d 418, 423-24, 693 P.2d 92 (1985); *E.F. Hutton & Co. v. City National Bank*, 149 Cal. App. 3d 60, 196 Cal. Rptr. 614 (1983); *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal. 3d 671, 582 P.2d 920, 936, 148 Cal. Rptr. 329 (1978); *Kraftsman Container Corp. v. United Counties Trust Co.*, 169 N.J. Super. 488, 404 A.2d 1288 (1979).

[5] RCW 62A.3-307(b)(4).

[6] 103 Wn.2d 418, 693 P.2d 92 (1985).

[7] *Olympic Bank*, 103 Wn.2d at 422.

the guardian was breaching his fiduciary duty.[8] As support, the court cited to former RCW 62A.3-304 (1965) to explain that when a fiduciary deposited a check payable to the fiduciary as guardian into his personal account, the credit union was on notice that there were adverse claims to the check.[9]

Here, the credit union took the check with notice of Richards' breach under RCW 62A.3-307(b). Accordingly, the credit union had notice of a potential claim to the proceeds by Michelle and could not be a holder in due course. In order to be a holder in due course, a bank must satisfy five requirements.[10] "It must be (1) a holder (2) of a negotiable instrument, (3) that took the instrument for value (4) in good faith and (5) without notice that it was overdue, dishonored, or of any defense or claim to it on the part of any person."[11]

When a bank is the payee on a check, the bank is not a holder in due course if the bank delivers funds to a third party bearer.[12] A check made payable to a bank is not bearer paper, but must be treated according to the wishes of the drawer, not the person presenting the check. Although Washington courts have not encountered such a situation before, this rule is consistent with other jurisdictions.[13]

---

[8] *Olympic Bank*, 103 Wn.2d at 422.

[9] *Olympic Bank*, 103 Wn.2d at 422.

[10] *Olympic Bank*, 103 Wn.2d at 421-22.

[11] *Olympic Bank*, 103 Wn.2d at 422.

[12] *See, e.g., Douglass v. Wones*, 120 Ill. App. 3d 36, 458 N.E.2d 514, 522 (1983) (holding that "under these circumstances the bank . . . generally cannot be a holder in due course as against the drawer if it has permitted the presenter to withdraw or otherwise use the proceeds of the check without taking precautions to determine the authority of the person to receive them").

[13] As the Seventh Circuit observed:

[W]hen a drawer owes nothing to a bank but writes a check payable to the bank's order, the drawer places that check in the bank's custody, with the expectation that the bank will negotiate the check according to the *drawer's* wishes; the bank may not, therefore, treat the check as bearer paper and blindly disburse the proceeds according to the instructions of any individual who happens to present the check to the bank.

Simply put, when a party appears wishing to cash a check payable to a bank, the teller must inquire into the authority of the presenting party to direct disposition of the funds. By giving Richards proceeds from the check, the credit union interfered with Michelle's funds. Under these circumstances the credit union breached its duty to Michelle and was subject to a suit for conversion.

RCW 62A.3-420 allows beneficiaries to sue a bank for conversion under these circumstances,[14] either under common law conversion or under the provisions of the statute.[15]

■■ Common law conversion requires that a defendant willfully interfere with or deprive a lawful owner of her property without justification.[16] Under certain circumstances, money may become the subject of conversion.[17] But there can be no conversion of money unless it was wrong-

---

*Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 613-14 (7th Cir. 2001) (interpreting Illinois law); *see also Bullitt County Bank v. Publishers Printing Co.*, 684 S.W.2d 289, 292 (Ky. Ct. App. 1984); *Dalton & Marberry, P.C. v. NationsBank, N.A.*, 982 S.W.2d 231, 233-34 & n.2 (Mo. 1998); *Allis Chalmers Leasing Servs. Corp. v. Byron Ctr. State Bank*, 129 Mich. App. 602, 341 N.W.2d 837, 839 (1983); *Sun 'n Sand*, 582 P.2d at 938; *Bank of S. Md. v. Robertson's Crab House, Inc.*, 39 Md. App. 707, 389 A.2d 388, 393 (1978); *Transamerica Ins. Co. v. U.S. Nat'l Bank of Or.*, 276 Or. 945, 558 P.2d 328, 333 (1976).

[14] *See* RCW 62A.3-420 and U.C.C. § 3-420 cmts.; *see also Olympic Bank*, 103 Wn.2d at 422 (allowing suit against bank for beneficiary's loss); 2 James J. White & Robert S. Summers, Uniform Commercial Code § 18-4 (4th ed. 1995); Peter A. Alces, Law of Fraudulent Transactions § 3:70 (2002).

[15] *See* RCW 62A.3-420. The statute provides the framework for when a plaintiff may sue for conversion on an instrument:

(a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

RCW 62A.3-420(a).

[16] *Wash. State Bank v. Medalia Healthcare L.L.C.*, 96 Wn. App. 547, 554, 984 P.2d 1041 (1999).

[17] *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 378, 705 P.2d 1195 (1985).

fully received by the party charged with conversion, or unless such party was under obligation to return the specific money to the party claiming it.[18]

■ When a fiduciary holds an instrument in trust for or on behalf of a beneficiary, he is usually authorized to negotiate the instrument only for the benefit of the beneficiary. When the fiduciary instead negotiates the instrument for his own benefit, this gives rise to an equitable claim of ownership on the part of the beneficiary. The beneficiary may also assert this claim against any person not having the rights of a holder in due course.[19]

■ But in order for Michelle to recover from the credit union, her loss must be occasioned by the credit union's actions. Assuming that the credit union converted Michelle's funds by allowing Richards to deposit the funds into his personal account rather than a guardianship account, the credit union is not liable for the later misappropriation of those funds unless the credit union's actions caused or facilitated the loss. Here, Richards transferred the funds three days later into a UTMA account with no defalcation having occurred.

The court order releasing funds to Richards mandated that he establish a guardianship account. He did not. After depositing the remaining funds into his personal account, Richards withdrew the funds and deposited them into a UTMA account.

To establish a guardianship account, a guardian must follow specific steps mandated by statute. The burden of notifying the court of any significant changes to the guardianship account falls on the guardian, not the bank.[20] Once a guardian establishes the account, his access to the account is limited only if a court order limits his access. Here,

---

[18] *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 83, 18 P.3d 1144, *review denied*, 145 Wn.2d 1003 (2001).

[19] *See* 4 WILLIAM D. HAWKLAND, HAWKLAND UNIFORM COMMERCIAL CODE SERIES § 3-304:6 (citing U.C.C. § 3-306(a)).

[20] RCW 11.92.040(3).

the court had removed a block on Michelle's funds, and instructed Richards to establish a guardianship account in her name.

A guardian may also establish a UTMA account for his ward. These accounts allow a guardian to treat the ward's money as if it were his own, subject of course to the guardian's fiduciary obligation to the ward.[21]

Once Richards established a UTMA account in his daughter's name, he was free to invest her money as he saw fit. Under the UTMA, transfers are made to a custodian, which can be a trust company or an adult other than the transferor.[22] The custodial property is indefeasibly vested in the minor, but control and management of the property rest solely with the custodian.[23] A custodian may make any investment that would be appropriate for a trustee, and is held to the same standard of care as a trustee.[24] Thus, a custodian can function virtually as a trustee with respect to management of the custodial property.

If the funds had remained at the credit union in a custodial account, no mechanisms or procedures would have restricted his access to the funds. Michelle argues that because the credit union disbursed funds into her father's personal account, the credit union became fully liable when her father subsequently misappropriated those funds. But no Washington cases holding banks liable for conversion

---

[21] *See* RCW 11.114.130(1) (custodians have all the rights, powers, and authority over property that unmarried adults have over own property).

[22] RCW 11.114.090(1)(f)(ii).

[23] RCW 11.114.110(2).

[24] RCW 11.114.120, .130. RCW 11.114.130 explains the rights and responsibilities of a guardian. The statute provides

(1) A custodian, acting in a custodial capacity, has all the rights, powers, and authority over custodial property that unmarried adult owners have over their own property, including without limitation all the powers granted to a trustee under RCW 11.98.070, but a custodian may exercise those rights, powers, and authority only in a custodial capacity.

(2) This section does not relieve a custodian from liability for breach of RCW 11.114.120.

RCW 11.114.130.

have allowed the plaintiff to recover, absent a showing that the bank's action proximately caused the loss. And those cases holding a bank liable for conversion are distinguishable because defalcation did occur as a result of the conversion.[25]

It is true that in *Olympic Bank*, our Supreme Court held a bank liable for conversion when the guardian dissipated the funds of the ward.[26] But in *Olympic Bank*, the funds were dissipated directly from the guardian's personal account at the bank.

In *Rensselaer Valve Co. v. National Bank of Commerce of Seattle*,[27] a bank disregarded an employer's instructions by allowing a fiduciary to deposit company funds into his personal account and cash company checks for cash. Notably, the court recognized that if the checks had been deposited according to the employer's instructions, the fiduciary could have later withdrawn the money and put it in his private account by virtue of his authority.[28] But he did not do this. Instead, he cashed checks improperly and never deposited company funds into the company account. And like *Olympic Bank*, the fiduciary converted the funds as a direct result of the bank's actions.

The *Rensselaer* court held that the moment the bank cashed the checks and gave the money directly to the fiduciary, "the wrong had been done," and the bank was liable for assisting the fiduciary in committing conversion.[29] But in *Rensselaer*, there was no subsequent intervening action that served to sever the causal relationship between the act and the subsequent damage.

Here, the funds remained in Richards' personal account for three days. If he had misappropriated these funds

---

[25] *See, e.g., Olympic Bank*, 103 Wn.2d at 423-24; *Rensselaer Valve Co. v. Nat'l Bank of Commerce of Seattle*, 129 Wash. 253, 256, 224 P. 673 (1924).

[26] *Olympic Bank*, 103 Wn.2d at 424.

[27] 129 Wash. 253, 224 P. 673 (1924).

[28] *Rensselaer*, 129 Wash. at 256.

[29] *Rensselaer*, 129 Wash. at 259.

during that period, *Olympic Bank* and *Rensselaer* would support holding the credit union liable for the misappropriation. But he did not do so. Instead, he then withdrew the funds and deposited them in a UTMA account. Although the court order had required Richards to deposit the funds in a guardianship account, a UTMA account was functionally equivalent. As Michelle acknowledged at oral argument if, instead of depositing the funds into her personal account, the funds had been directly deposited into the UTMA account, the credit union would not have been liable for conversion of the funds. The UTMA account provided similar safeguards and protections as a guardianship account. Thus, once the funds were deposited into the UTMA account with no defalcations having occurred, the credit union's wrongful act was no longer the proximate cause of the subsequent defalcations.

Because Richards subsequently placed the check's proceeds in a UTMA account, Michelle cannot establish any damages from the credit union's conversion except for the $100 Richards withdrew when he deposited the check into his personal account. We therefore affirm the trial court's summary judgment, except as to the $100. Because the trial court's judgment did not award damages to Michelle for $100 plus prejudgment interest, we reverse and remand for a revised order in accordance with this opinion.

Cox, A.C.J., and KENNEDY, J., concur.

Review denied at 150 Wn.2d 1035 (2004).