# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LINDSEY (EVANS) RODRIGUEZ,

                Plaintiff,

      v.

HIDDEN RIVER RANCH, LLC and
CALVIN EVANS III,

                Appellants,

CORY EVANS, individually, and on
behalf of HIDDEN RIVER RANCH, LLC,

                Respondent.

No. 84985-9-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Cal Evans Jr.'s father left him a horse ranch, but because Cal Jr.[1] was found to have financially exploited his father, the application of the antilapse statute caused the property to pass to Cal Jr.'s four adult children as tenants in common. Two of his children, including Cory Evans, later quitclaimed their interest in the property to Hidden River Ranch LLC (HRR). Cal Jr. identifies himself as the owner and sole member of HRR. When Cory's sister Lindsey sued to force the sale of the property, Cory intervened and filed a third-party action against Cal Jr. and HRR. Cory asserts an ownership interest in HRR and the subject property.

---

[1]We use first names for clarity because multiple people share the same last name.

During the ensuing litigation Cal Jr.[2] frustrated Cory's attempts at discovery in the third-party action, causing the trial court to extend discovery deadlines and issue multiple sanctions such as attorney fees and orders to compel. Eventually the trial court determined that Cal Jr.'s discovery violations were willful and that lesser sanctions had failed to bring about compliance. The court struck Cal Jr.'s pleadings and a different judge later entered a default judgement in Cory's favor.

In this appeal Cal Jr. argues that the courts did not properly find *all* of the Burnet[3] factors on the record before imposing the harshest sanctions. We agree and reverse the order striking the pleadings and the order granting a default judgment. Reversal means this case may proceed toward trial with the opportunity for appropriate pretrial motions and discovery.

BACKGROUND

Facts

This is the third time a family dispute over the subject horse ranch in Sultan, Washington has reached this court. The background facts are set forth in the prior appeal and will be repeated where needed to provide context. See Hidden River Ranch, LLC v. Rodriguez, No. 82228-4-I (Wash. Ct. App. Nov. 14, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/822284.pdf review denied, 528 P.3d 357 (2023); In re Est. of Evans, 181 Wn. App. 436, 326 P.3d 755 (2014).

Calvin H. Evans Senior (Cal Sr.) owned the horse ranch before his death. Following Cal Sr.'s death in 2011, the probate court found that his son, Calvin Evans Jr.

---

[2] HRR and Cal Jr. were represented by the same attorney. We refer to these third-party defendants collectively as Cal Jr.

[3] Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1035 (1997).

(Cal Jr.) had financially exploited his father and deemed Cal Jr. to have predeceased his father under RCW 11.84.030. Hidden River Ranch, No. 82228-4-I, slip op. at 2. The ranch passed to Cal Jr.'s four children: Lindsey Rodriguez, Calvin Evans III (Cal III), Cory Evans and Jesse Evans. Id. They owned the ranch as equal tenants in common. Id.

In 2017, Cory and Jesse entered into an agreement with their father to quitclaim their interest in the property to Cal Jr.'s limited liability company, Hidden River Ranch, LLC (HRR). Id. "[I]n exchange, Cal Jr. agreed 'to execute a will in which Cory and Jesse are each named as beneficiaries and each to receive one half of any interest' that Cal Jr. would have in the property." Id.

## Procedure

In 2019, Lindsey[4] brought a suit against HRR and Cal III seeking to force a partition by sale of the entire property. Id. at 3. Lindsey's complaint maintained that partition in kind was not feasible or practical without great prejudice to the owners. Id. HRR filed a reply opposing all partition remedies and, in the alternative, asking that any sale be subject to a life estate in the property that it asked the court to grant Cal Jr.[5] Id. at 3-4. Cory then intervened in Lindsey's action by filing a third-party complaint against HRR and Cal Jr. Id. at 3. Cory seeks a judicial dissolution of HRR and the imposition of a constructive trust. Id. Cory otherwise supported Lindsey's request for partition by sale. Id. After the court granted Lindsey's motion for sale in January 2021 and denied HRR's request for a life estate to Cal Jr., this court granted HRR's motion for

---

[4] Though Lindsey has a different last name than her siblings, we have followed the parties' practice in their appellate briefs of referring to each of the siblings by their first names for the sake of clarity and consistency.

[5] Cal III appeared pro se in the ensuing action but did not file any pleadings.

discretionary review. Id. at 6. While that appeal was pending, robust litigation of Cory's third-party complaint continued.

In February 2021 Cal Jr. filed a motion for summary judgment against Cory's third-party claim, asserting absence of any genuine issue of material fact. The trial court denied the motion. In its minutes, the trial court found evidence that "some sort of an agreement existed" which could potentially "furnish Cory with causes of action" based on an expectation.

In July 2021 Cory filed a motion for default judgment claiming Cal Jr. resisted multiple discovery requests. Cory asserted that Cal Jr. "refused to cooperate in deposition scheduling . . . [and w]hen finally deposed, Calvin Jr.'s evasive and misleading testimony was tantamount to non-answer under the rules." Cory further alleged Cal Jr. had used evasive tactics to avoid answering interrogatories, document requests, and subpoenas. This included defense counsel advising Cal Jr. to not answer a broad array of questions in violation of CR 30(h)(3). In response to the motion, Cal Jr. argued *inter alia* that the pending discretionary review of the partition claim stayed the trial court's proceedings on the partition sale action and that proceeding with Cory's default motion thus "may be a violation" of this court's stay order. Cory's motion for default was denied.[6]

In August 2021 Cory filed a motion to compel production, requesting a special master and award of sanctions. At the August 17 hearing on the motion to compel, Cory's counsel asserted that multiple deadlines for electronic discovery production had been ignored, and that Cal Jr. had also been "[i]gnoring interrogatories, feigning

---

[6] The record does not include the verbatim report of proceedings from the hearing on the motion and the order of denial does indicate the superior court commissioner's reasoning.

forgetfulness to the majority of deposition questions, twice threatening to no-show deposition, including the day before deposition. . . "  The trial judge orally found that:

> [A] fair process of discovery hasn't taken place here.
> In reviewing the documents provided, I'm very concerned about the fact that there was a deposition in which the answers were essentially stonewalled.  The answers were essentially "I don't know."
> . . .
> But the rules of evidence are designed to be liberally construed to allow for the free flow of information so long as that information can be shown to be relevant, and all the information requested here, as I can see, is relevant.

The court orally ordered that copies of all requested documents be put on discs and provided to Cory's counsel within 14 days.  The court also ordered that, "if there is another deposition," Cal Jr.[7] will sit for it and answer the questions.  The court required Cal Jr. to answer the interrogatories in 14 days.  The court denied Cory's request to appoint a special master, but granted him attorney fees for having to bring the motion.  The court signed an order on September 3 consistent with its oral ruling, but reserved on the amount of attorney fees because it had not received an affidavit as to fees.  That same day, Cory filed an amended motion and affidavit for attorney fee award.

On September 9, Cal Jr. filed an objection to the motion for attorney fees.  On September 30, Cal Jr. filed an emergency motion asking this court to stay discovery and trial in the third-party complaint while his appeal in the first-party partition action was pending review.

On October 1, Cory filed a motion to strike Cal Jr.'s pleadings and to enter a fee order.  Cory asserted that Cal Jr. failed to comply with the court's September 3

---

[7] According to the verbatim report of proceedings, the court ordered "Cory" to sit for deposition, but it appears the court misspoke and meant to say Cal. Jr. as evident from the context and the court's later-signed order.

5

discovery order. The same day, Cal Jr. filed with this court another emergency motion for a stay of trial and discovery.[8] On October 7, a commissioner of this court denied Cal Jr.'s motion to stay discovery and the scheduled trial, reasoning that a stay of Cory's action was not necessary to preserve this court's review of Lindsey's first-party partition claim.

On October 8, the court heard oral argument on Cory's motion to strike the pleadings. Cory asked the trial court to "hold Calvin Jr. in default not only of the September 3rd order but of multiple discovery orders, and to find that no lesser sanctions have sufficed or would suffice, in writing, to compel Calvin Jr.'s compliance [sic] to find that Cory has been substantially prejudiced in his preparation for trial and that Calvin Jr.'s actions have been willful and deliberate." The trial court declined to strike the pleadings. Instead, the court ordered Cal Jr. to provide all discovery by October 12 in the form and format required by the civil rules and to appear for deposition at a time and place determined by Cory's counsel. The court then stated, "[i]f he fails to do that, the Court will strike his pleadings and enter a default." The court also signed an order on judgment awarding attorney fees from its August 17 and September 3 orders, as well as ordered Cal. Jr. to pay an additional $1,000 in attorney fees. The court entered its written order reflecting its October 8 rulings on October 15. After the hearing, Cal Jr. filed an emergency motion with this court to modify the October 7 commissioner ruling. A panel of judges of this court denied that motion.

---

[8] Cory asserts that Cal Jr. filed three emergency orders with this court to stay trial and prevent enforcement of discovery orders. However, Cal Jr.'s first motion was a request to stay the sale of the disputed property. This court granted the motion.

On October 13 Cory moved to strike Cal Jr.'s pleadings, asserting that Cal Jr. had failed to comply with the court's October 8 order.  Specifically, Cory claimed Cal Jr.'s counsel did not respond to a request for a link to the October 12 production upload and to a proposed October 15 deposition date.  Cory deposed Cal Jr. on October 25.

At the following November 4 hearing on the motion to strike the pleadings, Cory's counsel asserted that during the October 25 deposition, Cal Jr. identified documents that were missing and title reports that had never been produced that were in his possession.  The trial court granted the motion.  The court stated

> My orders regarding discovery have not been followed.  The defendant has willfully and intentionally either dragged his feet, obscured discovery, failed to cooperate and has engaged in essentially a rearguard action designed to obscure the discovery in this case.  I don't know of any other lesser sanction under CR 37 that I could enter in this case other than to grant the striking of the pleadings, as I find it was willful and that I find it impaired the function of this Court, disobeying my orders.  So I will grant the motion.  All documents requested by [Cory's counsel] must be produced.

The court entered its written order two weeks later.  The court found

> third-party defendant Calvin Evans Jr. in DEFAULT of this Court's February 24, September 3, and October 8 discovery orders.  The Court has considered and imposed lesser sanctions: extending discovery for the purpose of a second deposition; extending deadlines for compliance with discovery requests; and awarding monetary sanctions of $3,722.50 and $1,000.  Lesser sanctions have proven insufficient to compel compliance with the Civil Rules and this Court's orders . . . .

The court struck the pleadings but still ordered Cal Jr. to produce all documents requested, including the documents revealed in his deposition.  The court denied Cal Jr.'s motion for reconsideration.

 On November 14, 2022, this court issued our opinion affirming the trial court's order requiring the partition by sale of the horse ranch.  Hidden River Ranch, No. 82228-4-I.  In December 2022, more than a year after the court

7

struck Cal Jr.'s pleadings and denied his motion for reconsideration, Cal Jr. filed a motion to modify the court's sanctions order striking his pleadings. The court denied the motion.

Cory moved for entry of default judgement based on the fact Cal Jr.'s pleadings had been stricken. The trial court, a different judge than the one who struck the pleadings, signed the default order in Cory's favor on January 9, 2023. The trial court made several findings of fact including that Cal Jr. and HRR "have obstructed discovery in this matter, and disregarded this court's discovery orders such that third-party defendants' pleadings have been stricken" and that they "knowingly and deliberately falsified and misrepresented financial records requested in discovery, and have misrepresented the LLC's assets." The court found that Cal Jr. owed Cory a fiduciary duty under the HRR LLC agreement, and that Cal Jr.'s "breach of fiduciary duties caused damages and entitle Cory to an award of attorney fees and costs." Cory requested $105,435.49 in reasonable fees and costs because of Cal Jr.'s breach of his fiduciary duty and as allowed in equity. On April 21, 2023, over Cal Jr.'s objections, the court awarded Cory $9,109.50 in attorney fees and costs. The court ordered Cal. Jr. and his attorney to each pay half of the amount.

Cal Jr. appeals the January 9, 2023 default judgment and the April 21, 2023 order on entry of default judgment awarding reasonable attorney fees.

DISCUSSION

*Burnet* Factors

"A trial court exercises broad discretion in imposing discovery sanctions under CR 26(g) or 37(b), and its determination will not be disturbed absent a clear abuse of discretion." Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "A trial court abuses its discretion when its decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Thurlby, 184 Wn.2d 618, 624, 359 P.3d 793 (2015) (quoting State v. Woods,143 Wn.2d 561, 579, 23 P.3d 1046 (2001)).

> A discretionary decision rests on "untenable grounds" or is based on "untenable reasons" if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'"

Mayer, 156 Wn.2d at 684 (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). When a trial court imposes one of the "harsher" remedies under CR 37(b) as a discovery sanction, "the record must clearly show (1) one party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would have sufficed." Magana v. Hyundai Motor Am., 167 Wn.2d 570, 584, 220 P.3d 191 (2009) (citing Burnet, 131 Wn.2d at 494). Striking pleadings or rendering a judgment by default against the disobedient party are harsher sanctions which require the support of Burnet findings. Mayer, 156 Wn.2d at 690 (holding that the reference in Burnet to the "harsher remedies allowable under CR 37(b)" applies to such remedies as "dismissal, default, and the exclusion of testimony— sanctions that affect a party's ability to present its case"). A trial court's reasons for

imposing discovery sanctions should "be clearly stated on the record so that meaningful review can be had on appeal." Burnet, 131 Wn.2d at 494. "A trial court may make the *Burnet* findings on the record orally or in writing." Teter v. Deck, 174 Wn.2d 207, 217, 274 P.3d 336 (2012). "[A] colloquy might satisfy *Burnet* in substance even if the judge fails to invoke that case by name." Jones v. City of Seattle, 179 Wn.2d 322, 344, 314 P.3d 380 (2013) (analyzing oral rulings by a trial judge to determine if substantive findings were made on the three Burnet factors, where severe sanction of witness exclusion was challenged).

As a preliminary matter, we note that Cal Jr. did not expressly identify or attach the November 18, 2021 order striking his pleadings to his notice of appeal. However, designation of an order in an appeal "also subjects to potential review any related order that 'prejudicially affected the designated decision and was entered before review was accepted.'" Clark County v. W. Wash. Growth Mgmt. Hearings Review Bd., 177 Wn.2d 136, 145, 298 P.3d 704 (2013) (quoting In re Dep. of Brown, 149 Wn.2d 836, 840 n.2, 72 P.3d 757 (2003)). "The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." Clark County, 177 Wn.2d at 144 (citing RAP 5.3(a), 10.3(a), (g), 12.1). RAP 1.2(a) indicates that the rules of appellate procedure are to "be liberally interpreted to promote justice and facilitate the decision of cases on the merits."

> In a case where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the Court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case or issue.

State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

Cory based his motion for default on the fact Cal Jr.'s pleadings were struck. The January 9, 2023 order entering the default judgment expressly found that Cal Jr. and HRR "obstructed discovery in this matter, and disregarded this court's discovery orders such that third-party defendants' pleadings have been stricken." While Cal Jr. did not identify the November 18 order striking his pleadings in his notice of appeal, he did appeal the January 9 entry of default judgement that is predicated on those struck pleadings. Cal Jr. presents a substantive argument on the issue of the struck pleadings in the body of his brief. In his own brief, Cory responds to the merits of Cal Jr.'s appeal and does not raise any procedural objections. We exercise our discretion and include in our review whether the court considered all the Burnet factors before striking Cal Jr.'s pleadings.

Cal Jr. argues that the trial court failed to adequately perform the analysis required by Burnet when it struck his pleadings as a discovery sanction. We agree. While the trial court properly found willful violations by Cal Jr. and considered lesser sanctions on the record, it failed to find that Cory was substantially prejudiced in his ability to prepare for trial.

*A. Substantial Prejudice*

Cory explicitly asked that the trial court "hold Calvin Jr. in default . . . of multiple discovery orders . . . [and] to find that Cory has been substantially prejudiced in his preparation for trial." Cory's August 2021 Motion to Compel also argued that "[a]s Defendants have produced nothing in good faith, it seems almost redundant to state that Cory has been substantially prejudiced in his ability to prepare for trial." However, the trial court did not make findings related to substantial prejudice to Cory in his

11

preparation for trial in either the written order striking Cal Jr.'s pleadings, or during the hearing on the motion.

Cory contends that "the record is rife with discussion of the prejudice to Cory's trial preparations." But Cory cites to his own motion and arguments below, and questions asked by the court, but not to supportive findings by the court. Cory quotes to the following exchange between his counsel and the court at the October 8 hearing on Cory's first motion to strike Cal Jr.'s pleadings :

> THE COURT: [Counsel], can I ask you a question? When is trial set?
> [Counsel]: October 19th.
> [Cal Jr.'s Attorney]: Correct.
> THE COURT: So there's no way you could complete any of the discovery requested; is that correct?
> [Counsel]: There's no way.
> [Cal Jr.'s Attorney]: I'm sorry. I didn't understand your question.
> THE COURT: His answer is that there's no way to complete discovery short of extending the case; is that correct?
> [Counsel]: That's correct.

First, this exchange does not indicate a finding by the court. Second, the court declined to strike the pleadings at that time. Instead, the court imposed specific deadlines and ordered Cal. Jr. to comply with those discovery deadlines, warning that if he failed to do so the court would "strike his pleadings and enter a default." Later, when the court was again faced with a motion to strike the pleadings, the court found that Cal Jr.'s conduct "impaired the function of this Court, disobeying my orders," but did not find that Cory had been substantially prejudiced in his ability to prepare for trial.[9] To the extent Cory argues that the record supports such a finding, he effectively asks us to substitute our own analyses and findings for those of the lower court, which we decline to do. Appellate courts do not make <u>Burnet</u> findings in the first instance based on the record

---

[9] Notably, it appears Cory's counsel presented the proposed order signed by the court.

12

where a lower court failed to conduct the required on-the-record analysis. <u>Teter</u>, 174 Wn.2d at 219; <u>Blair v. Ta-Seattle E. No. 176</u>, 171 Wn.2d 342, 351, 254 P.3d 797 (2011); <u>Rivers v. Wash. State Conference of Mason Contractors</u>, 145 Wn.2d 674, 694, 41 P.3d 1175 (2002).

The record is devoid of the required court findings establishing that Cal Jr.'s discovery violations substantially prejudiced Cory's ability to prepare for trial.

*B. Lesser Sanctions*

Cal Jr. also argues that the trial court did not properly consider lesser sanctions because the order striking pleadings "does not reveal what lesser sanction it considered." Cal Jr. suggests various lesser measures, such as continuance or appointment of a special master, that might have "achieved whatever result the trial court wanted." Cal Jr. cites no authority for the assertion that a trial court must explicitly consider and describe all types of lesser sanctions. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." <u>State v. Logan</u>, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting <u>DeHeer v. Seattle Post-Intelligencer</u>, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

The trial court stated "I don't know of any other lesser sanction under CR 37 that I could enter in this case other than to grant the striking of the pleadings." In the written order, the court said it had "considered and imposed lesser sanctions: extending discovery for the purpose of a second deposition; extending deadlines for compliance with discovery requests; and awarding monetary sanctions of $3,722.50 and $1,000. Lesser sanctions have proven insufficient to compel compliance with the Civil Rules and

13

this Court's orders. . . "  This finding is sufficient to satisfy the "consideration of lesser sanctions" required by Burnet.  See Scott v. Grader, 105 Wn. App. 136, 142, 18 P.3d 1150 (2001) (Holding there was no Burnet violation for failure to consider lesser sanctions where trial court's prior unchallenged discovery order forewarned the more severe sanction if the court's order was not complied with).  The court properly considered and attempted lesser sanctions and made the appropriate findings on the record.

### C.  Substantial Evidence of Willfulness

Cal Jr. maintains that substantial evidence does not support the trial court's finding of willfulness.  We disagree.

"A party's disregard of a court order without reasonable excuse or justification is deemed willful."  Rivers, 145 Wn.2d at 686-87.  "Fair and reasoned resistance to discovery is not sanctionable."  Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 346, 858 P.2d 1054 (1993).  However, "[b]road discovery is permitted under CR 26."  Magana, 167 Wn.2d at 584.  If a party does not seek a protective order, then the party must respond to a discovery request, and cannot simply ignore or fail to respond to the request.  CR 26(c); See Cedell v. Farmers Ins. Co. of Wash., 176 Wn.2d 686, 695, 295 P.3d 239 (2013) ("[A] party wishing to assert a privilege may not simply keep quiet about the information it believes is protected from discovery; it must either, reveal the information, disclose that it has it and assert that it is privileged, or seek a protective order.").

Cal Jr. argues he had two "fair and reasonable justifications" to resist discovery. First, he claims that he "reasonably relied on the advice of appellate counsel" that the

14

trial court lacked authority under RAP 7.2(l) to continue entering discovery orders after this court granted discretionary review of the trial court's order of partition by sale of the property. Cal. Jr. cites to the declaration of his appellate counsel that was submitted in support of Cal Jr.'s December 2022 motion to modify the court's November 2021 sanctions order striking the pleadings.[10] This declaration was not presented to the court at the time it heard the motion to strike the pleadings. "We do not accept evidence on appeal that was not before the trial court." State v. Curtiss, 161 Wn. App. 673, 703, 250 P.3d 496 (2011) (citing RAP 9.11)). Regardless, RAP 7.2(l) provides that "in a case involving multiple parties, claims, or counts, the trial court retains full authority to act in the portion of the case that is not being reviewed by the appellate court." Notably, Cal Jr. concedes that this court denied his request to stay the third-party claim proceedings. Cal Jr. also relies on In re Det. of Williams, 106 Wn. App. 85, 103-04, 22 P.3d 283 (2001), rev'd in part on other grounds, 147 Wn.2d 476, 55 P.3d 597 (2002). But Williams is distinguishable because it did not involve multiple parties or claims. Id. Williams argued that the State's appeal was moot because the trial for a sexually violent predator proceeding had to be scheduled within 45 days from the filing of the petition and the State had not sought or obtained an order staying the proceeding during pendency of the appeal. Id. at 103. This court affirmed a commissioner ruling that the 45-day period did not continue to run and therefore did not expire while the State's appeal was pending. As this court explained in Williams, "*[i]n this setting* there was no

---

[10] Appellate counsel wrote, "I advised HRR/Cal Jr. and their trial counsel that this Court lacked authority to hold a trial on the claims of third-party plaintiff Cory Evans and to enforce the pre-trial discovery rules until after the Court of Appeals terminated its review of this Court's January 6 sale order in this case." The declaration did not specify the timing of this advice, but did acknowledge that appellate counsel filed a September 2021 motion to stay the trial court's pending trial and all discovery, and that that motion to stay was denied on October 7, 2021.

need for a stay of the 45 day trial period." Id. at 103-04 (emphasis added). Williams did not involve RAP 7.2(I).

Second, Cal Jr. contends that "undisputed evidence" shows he "acted in good faith to comply with the trial court's orders." The record belies his assertion. For example, Cal Jr. argues that he acted in good faith to comply with the court's order by sitting for another deposition. The trial court in August 2021 had already found that Cal Jr.'s deposition answers "were essentially stonewalled," and ordered him to again sit and answer questions. After finding in November 2021 that Cal Jr. remained "willfully and deliberately" noncompliant, the court had to again order Cal Jr. to appear for a deposition.

When he did testify at the third deposition, Cal Jr. confirmed the accounting files he had produced in response to discovery requests were incomplete. He testified that he did not review the QuickBooks[11] file produced or attest to its accuracy. He also claimed that the included income "as far as I know, is complete." He claimed he received some payments through Venmo,[12] but never printed out his Venmo transactions in response to discovery requests. Instead, he testified that the QuickBooks file represented his income data that was entered by his wife from his monthly handwritten spreadsheets of HRR's transactions, though he did not know if his wife included all his past spreadsheets. Cal Jr. said all his spreadsheets were kept in five boxes, though two of them were missing. He testified that he had produced only one set of spreadsheets in discovery because "they're almost all identical."

---

[11] QuickBooks is an accounting software package that HRR used to keep track of its finances.

[12] Venmo is an internet mobile payment service that allows people to send and receive money electronically.

At the November 2021 hearing on Cory's motion to strike pleadings, the court found that its "orders regarding discovery have not been followed. The defendant has willfully and intentionally either dragged his feet, obscured discovery, failed to cooperate, and has engaged in essentially a rearguard action designed to obscure the discovery in this case." The record supports this finding.

Notwithstanding the fact evidence supports the court's finding that Cal Jr. willfully and intentionally obscured discovery, because the court did not consider all the Burnet factors on the record we reverse the striking of Cal Jr.'s pleadings.

### Default Judgment

Cal Jr. next challenges the January 2023 entry of default judgment. We reverse the order of default judgement for two reasons. First, the struck pleadings, which we reverse, formed the foundation of this subsequent entry of default judgment, and secondly, the trial court also did not make all the required Burnet findings before entering a default judgment.

The trial court may impose a default judgment as a sanction for a discovery violation. CR 37(b)(2). However, just like striking of pleadings, "[a] default judgement is a harsh remedy for which the trial court must conduct a Burnet analysis on the record." J.K. by Wolf v. Bellevue Sch. Dist. No. 405, 20 Wn. App. 2d 291, 315, 500 P.3d 138 (2021) (citing Magana, 167 Wn.2d at 583-84)). In entering the default judgment, the trial court found that Cal Jr. obstructed discovery and disregarded the court's orders such that his pleadings were stricken. The trial court also found that Cal Jr. and HRR "knowingly and deliberately falsified and misrepresented financial records requested in discovery." While the default judgment plainly flowed from the stricken pleadings, the

17

trial court still failed to orally or in its written order make all the required <u>Burnet</u> findings. Even if referencing the earlier court's prior orders and the striking of the pleadings sufficiently incorporated the previous <u>Burnet</u> findings, the trial court still did not make a finding as to whether the discovery violations substantially prejudiced Cory's ability to prepare for trial. Accordingly, we reverse the order entering the default judgment.

<u>Remedy</u>

If we were to reverse, Cory asks us to follow <u>Rivers</u>, 145 Wn.2d at 700, and remand to the trial court to make findings as to whether Cal Jr.'s actions substantially prejudiced Cory's ability to prepare for trial. Cal Jr., relying on <u>Blair</u>, 171 Wn.2d at 352 n.6, argues that remanding for additional findings is not appropriate.

In <u>Rivers</u>, 145 Wn.2d at 695, the trial court made some, but not all of, the necessary affirmative findings on the record as required by <u>Burnet</u>. The Supreme Court remanded to the trial court for a "new determination whether the complaint should be dismissed, with specific findings on the record" in compliance with the <u>Burnet</u> factors. <u>Id.</u> at 700. However, after <u>Rivers</u>, our Washington Supreme Court has twice rejected a request to allow a trial court to make "after-the-fact findings" to support a sanction when all the <u>Burnet</u> findings had not been made. <u>Teter</u>, 174 Wn.2d at 220-21; <u>Blair</u>, 171 Wn.2d at 352 n.6 (allowing the trial court to make after-the-fact findings to support its exclusion orders "would be inappropriate."). The <u>Teter</u> court attempted to distinguish <u>Rivers</u>:

> Admittedly, we have remanded cases to the trial court for *Burnet* findings. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wash.2d 674, 700, 41 P.3d 1175 (2002). However, the action under review in *Rivers* was a dismissal with prejudice rather than the grant of a new trial after a judgment on the merits; we remanded for a new determination of whether the complaint should be dismissed, with specific *Burnet* findings on the

18

record.  *See id.*, at 683, 700, 41 P.3d 1175.  Where a case has been decided on the merits, either by jury trial or on summary judgment, we have remanded for a new trial.  *Blair*, 171 Wash.2d at 352, 254 P.3d 797; *Burnet*, 131 Wash.2d at 498-99, 933 P.2d 1036.

174 Wn.2d at 221.  However, despite the procedural distinction of disposition under a "default judgment" in the instant case and that of "summary judgment" in <u>Blair</u>, the two cases are more similar than not.  As the <u>Blair</u> court explained

> Having vacated the portions of the discovery orders striking Blair's witnesses, the question remains as to whether the order granting summary judgment must also be reversed. [Respondent] argues that the trial court properly dismissed Blair's case with prejudice because she could not carry her burden to show causation or damages without testimony from her health care providers, and those witnesses were stricken. . . . This argument underscores that the dismissal was premised on the exclusion of [Blair's witnesses].

171 Wn.2d at 351-52.  In the instant case, the trial court made factual findings in support of a default judgment in favor of Cory in light of the fact that Cal Jr.'s pleadings were stricken.  It also can be argued that <u>Blair</u> is not that distinct from <u>Rivers</u>.  In both matters, the complainants' cases were initially dismissed with prejudice.  <u>Blair</u>, 171 Wn.2d at 342; <u>Rivers</u>, 145 Wn.2d at 677.  Nonetheless, <u>Blair</u> is the more recent case and the Supreme Court, in <u>Teter</u>, reaffirmed that after-the-fact findings are inappropriate.  Cory, while completely failing to acknowledge the existence of <u>Blair</u> or <u>Teter</u>, only cites <u>Rivers</u> for the proposition that the proper remedy is to remand to allow for a new <u>Burnet</u> determination to support the discovery sanctions.  Where a party fails to cite to relevant authority, we generally presume that the party found none.  <u>State Constr., Inc. v. City of Sammamish</u>, 11 Wn. App. 2d 892, 906, 457 P.3d 1194 (2020) (citing <u>Edmonds Shopping Center Assocs. v. City of Edmonds</u>, 117 Wn. App. 34, 353, 71 P.3d 233 (2003)).  Also, the instant case is distinguishable from <u>Rivers</u>.  Dismissal of

19

the complaint in Rivers left the respondent in the same position as before the appellant filed the complaint. In the instant case, the trial court entered a judgment in favor of Cory against Cal Jr.

Following the remedy in Blair, we reverse the striking of pleadings and the order entering a default judgment, but reversal "means the case will proceed toward trial with the opportunity for appropriate pretrial motions or discovery."[13] 171 Wn.2d at 352, n.6.

CONCLUSION

We hold that the lower court abused its discretion when it imposed the harsh remedy of striking Cal Jr.'s pleadings and entered a default judgment without making the required Burnet findings on the record. We reverse the striking of Cal Jr.'s pleadings and the order entering a default judgment. This reversal does not prohibit the

---

[13] We are aware that the Supreme Court has once applied a harmless error analysis when a trial court excluded testimony by a respondent's three late-disclosed witnesses without first conducting the Burnet inquiry. Jones, 179 Wn.2d at 338. The court reasoned that "this case comes to us in a procedural posture that distinguishes it from previous *Burnet* cases addressing witness exclusion." Id. at 355. The exclusion of testimony was harmless because it was either irrelevant, unfairly prejudicial, or cumulative. Id. at 357-360. It appears that this may not be the only circumstance where a Burnet violation may be harmless. See Keck v. Collins, 184 Wn.2d 358, 375, 357 P.3d 1080 (2015) (J. Gonzalez concurring) (observing a harmless error analysis would be extraneous when there are independent grounds to vacate the summary judgment order, but that will not be in many cases). In the instant case Cory did not attempt to argue that striking a party's pleadings was harmless.

trial court from considering appropriate pretrial motions or discovery-related requests as this matter proceeds toward trial.[14]

WE CONCUR:

_Cohen, J._

_Brennan, J_                    _Smith, C.J._

---

[14] Because we reverse we need not address Cal Jr.'s argument that the court erred in denying his summary judgment motion, and his motion to modify the sanctions order. We also need not address Cal Jr.'s challenge of the award of attorney fees and costs that were a part of the order entering a default judgment, which we reverse. Though a discovery sanction of attorney fees and costs is not a harsh remedy that requires Burnet findings, Cory has not presented any argument that the attorney fees and costs imposed could be segregated as sanctions unrelated to the motion for default judgment, which we reverse.